## GORDON v. GILMORE, executor.

1. It is not proper practice to exhibit to a witness on his examination in chief an affidavit formerly made by him in regard to the point in issue and to ask him if that was his former evidence and if it is true. *Daugharty* v. *Drawdy*, 134 *Ga.* 650 (3), 651 (68 S. E. 472).

(a) In view of the fact that it appears from the brief of evidence that the witness (who was examined by interrogatories) in answer to questions first testified fully as to the facts involved in controversy, and by a later interrogatory was asked to look at a certified copy of a will and a transcript of an affidavit made by him in connection with the probate of a will in common form, and see if that was a transcript of his testimony, and, if so, to state whether it was true, and in view of the fact that the ground of the motion for a new trial complaining of this ruling fails to comply with the requirement of law by setting out in full or in substance the affidavit, a reversal might not result from this ruling alone.

2. Where one ground of a caveat to a will was that the testator's mother used undue influence in its procurement, and there was some evidence tending to show that the mother, who was a legatee, had made admissions indicating that she caused the will to be made in the manner in which it was made, as against an objection for irrelevancy the evidence of a witness to the effect that generally, while the alleged testator and his mother lived, she had great influence over him, accompanied by facts on which apparently the opinion was based, was admissible.

(a) Objection to evidence on the general ground that it is "incompetent" or "inadmissible" raises no specific question of law for adjudication on exceptions to this court.

3. On an issue of devisavit vel non, where a caveatrix, as the daughter of the decedent, attacked the alleged will and contended that the testator did not have testamentary capacity at the time of its execution, and that it was procured by fraud and undue influence exerted on him by his mother, by reason of which his property was left to his mother and others, only two dollars being bequeathed to the daughter, as against an objection based on the ground of irrelevancy it was competent for the propounder to prove that the testator, who was separated from the mother of the caveatrix before her birth, expressed doubt as to her legitimacy. *Wright* v. *Hicks*, 15 *Ga.* 160 (11), 171 (60 Am. D. 687).

(a) In the will the testator stated that he left his property in Georgia to his mother, "except the sum of two dollars which I give to my daughter Naomi J. Stallings" (Stallings being the name of the testator), "or Naomi J. Gillian as she may be called" (Gillian being the name of his wife before marriage). The draftsman of the will testified that the testator said that he had separated from his wife and did not wish to leave the girl anything, but the clause quoted was inserted at the instance of the witness, who said that it was necessary to name her in the will, whereupon the testator replied: "Well, put her down for two dollars." *Held*, that if under such circumstances the naming, in the will, of the caveatrix as the daughter of the testatrix was a conclusive recognition of her as such, so as to prevent the propounder from deny-

ing that fact (*Thrower* v. *Wood*, 53 *Ga.* 458), yet the reasonableness of the disposition of the estate being relevant on the issue of testamentary capacity (Civil Code (1910), § 3841), and this evidence tending to explain the small bequest to the caveatrix, its admission was not error.

(*b*) If it was desired to limit the purpose for which such evidence could be considered, a request for instructions on that subject could have been made. In fact, the presiding judge did not submit to the jury as an issue the legitimacy of the caveatrix.

4. On an issue as to whether a testator was induced to make a will by undue influence, the state of feeling between a witness who testified in favor of the caveat and as to admissions by one of the legatees, and such legatee, was relevant. Civil Code (1910), § 5878.

5. Where it was charged in a caveat that the testator did not have testamentary capacity and that the will was procured by undue influence exerted on the testator by one of the legatees, and there was some evidence introduced tending to sustain such contention, it was error to admit evidence that the legatee, since deceased, had stated in effect that the testator's mind was sound and that the will was made in accordance with his wishes. Such statements of the legatee were self-serving and inadmissible.

6. Under the decision in *McDowell* v. *Preston*, 26 *Ga.* 528, testimony of a witness, whose evidence was taken by interrogatories, that another female witness was (apparently at the time when such interrogatories were executed) "an habitual user of morphine" was inadmissible, without showing that the mind of such witness was impaired by the habit, or that she was under the influence of the drug at the time when she testified, or when the facts occurred in regard to which she testified.

(*a*) The mere addition to the statement of the witness that the other witness was "not truthful, and would do or say anything to carry her point," did not render the evidence as to the use of morphine admissible.

7. Under the decision in *Barnwell* v. *Hannegan*, 105 *Ga.* 396 (31 S. E. 116), in seeking to impeach a witness on account of bad character the impeaching witness should be asked the questions touching general character pointed out in the Civil Code (1910), § 5882; and it is not competent to prove by one witness that the character of another is "bad as to truthfulness," and that from such character the impeaching witness would not believe the other on oath.

8. As a general rule, if the situation and circumstances of the testator and the attesting witnesses to a will at the time of its attestation are such that the testator, in his actual position, might have seen the act of attestation, the requirement of the law that the witnesses shall sign in his presence is sufficiently met. *Robinson* v. *King*, 6 *Ga.* 539.

(*a*) If at the time a testator made his will, by reason of an obstruction to the view, he could not have seen the attesting witnesses sign, by looking in that direction, and by reason of his enfeebled condition or suffering he could not have placed himself in a position to see them sign and did not see them, the attestation was not good. *Brooks* v. *Duffell*, 23 *Ga.* 441; *Reed* v. *Roberts*, 26 *Ga.* 294 (71 Am. D. 210).

FEBRUARY 19, 1914.

· Probate of will.    Before Judge Sheppard.    Tattnall superior court.    September 10, 1912.

*Way & Burkhalter,* for plaintiff in error.

*John P. Moore* and *Hines & Jordan,* contra.

LUMPKIN, J.    On June 3, 1893, A. P. Stallings executed an instrument as his last will 'and testament.    On July 4, after his death, it was probated in common form and recorded.    In 1909, Naomi J. Gordon, formerly Stallings, alleging herself to be the daughter of A. P. Stallings, deceased, and to be then 23 years of age, filed her petition to require the instrument to be propounded for probate in solemn form, and that it be set aside.    She alleged that it was procured by force, fraud, and undue influence on the part of the mother of A. P. Stallings; that, on account of wounds and injuries, the purported testator was so enfeebled in mind and body at the time of the execution of the instrument as not to have testamentary capacity; and that the instrument was not executed as required by law, in that the alleged testator did not declare to the attesting witnesses that the paper was his last will and testament.    The case was carried from the court of ordinary to the superior court by appeal.    The jury found in favor of the propounder of the will. The person who filed the petition to require the will to be propounded in solemn form, and set up objections to it in the nature of a caveat, moved for a new trial, which was refused, and she excepted.

The motion for a new trial is distributed among twenty-eight grounds.    Some of them are imperfect, some of them are not verified by the presiding judge, and some of them are so clearly without merit as to require no elaborate consideration.    Some of them, however, are well founded.    As there will be a new trial, the situation on which certain of these grounds rest can not arise again, such as that the court refused to reopen the case for the admission of evidence which came to the knowledge of counsel after the evidence had been closed, and the subsequent urging of the same evidence as newly discovered.    The headnotes deal with the substantial grounds of the motion, and cite authorities to sustain the positions announced in them, and they require no elaboration.    The different views of the courts in regard to impeaching a witness by proof of general character or character for veracity will be found discussed in 2 Wigmore on Evidence, 922.    Prior to the adoption

and taking effect of the first code (1863) this court seems to have sometimes recognized questions as to general character and sometimes as to character for veracity. *Boswell* v. *Blackman,* 12 *Ga.* 591; *Taylor* v. *Smith,* 16 *Ga.* 7; *Stokes* v. *State,* 18 *Ga.* 17; *Smithwick* v. *Evans,* 24 *Ga.* 461, 463. But in *Barnwell* v. *Hannegan,* supra, it was declared that, under the code, in seeking to impeach a witness on account of general bad character, the form of questions laid down in section 5882 should be followed. The charges on this subject, and also as to whether there was an obstruction which prevented the testator from seeing the witnesses sign by looking in that direction, without a change of his position, did not greatly vary from the requests. If it was necessary for him to be able to see without changing position, the reason for not changing (hypothetically. stated in the request as his enfeebled or painful condition) would not seem to seriously matter. But if the evidence on another trial authorizes the charge in the language of the request, and it is again requested, it may be best to give it as requested.                    *Judgment reversed. All the Justices concur.*