## 5539. DENNARD *v.* THE STATE.

The evidence authorized a finding that in running an automobile against and over a person in a public road, the accused was guilty of assault with intent to murder. A reckless disregard of human life may be the equivalent of a specific intent to kill; and whether it existed in this case was a question for the jury.

   DECIDED APRIL 18, 1914.

Indictment for assault with intent to murder; from Terrell superior court—Judge Worrill. February 7, 1914.

W. H. Morgan testified, that he was walking in the daytime along the left side of a public road 30 or 40 feet wide, when he heard an automobile cross a bridge behind him, and he looked back and saw it at a distance of 300 or 400 yards, approaching at the rate of

about 30 or 40 miles an hour, and Johnnie Dennard, the defendant, driving it. The witness stepped to the right of the road, to get down in a ditch, and was "about 12 feet in the right-hand ditch from the left-hand side where the vehicles travel," when the automobile struck him in the small of the back, knocked him down, and ran over him, the left wheel passing over his shoulder, and it went on up the road a distance of 75 or 100 yards, and there. Dennard, apparently without difficulty, turned it around and came back to him. Dennard did not get out of the car to assist him, and made no explanation or apology, though he was lying on the ground and could not get up, and was cut and bruised in various places. At the time the car ran over him George Nelson jumped out of the car and caught hold of him and tried to help him up. He had been rendered unconscious, and could not say positively whether the car slacked its speed or stopped immediately on striking him. Dennard, after coming back to him, went off, leaving him with Nelson. The tracks of the car seemed to be even and smooth before it struck him.

George Nelson testified, that Johnnie Dennard saw him in the road and invited him to ride, and he was in the automobile, seated at the right of Dennard, who was holding the steering-gear and driving the car, when he saw Morgan in the road at a distance of about 150 yards ahead of them; the road was straight and there was nothing to prevent them from seeing him. When they were about 100 yards from Morgan the witness said to Dennard, "There goes Mr. Morgan now, going to work; let him ride;" and Dennard said "All right," but the car kept on, running at the rate of about 30 miles an hour. Morgan passed from the left side of the road to the right side, and got near the ditch at the right side. The car, when it got about 25 yards from him, changed to the right and started to go across to the right side of the road, "sorter quartering across the road," and it ran over him when he was "about 5 feet from the right-hand ruts of the road." Before the car struck him he looked back, but could not get out of the way. Just before it struck him the witness called out to Dennard, "You are going to run over Mr. Morgan, my boss man," and when the car struck him the witness jumped out and went to him, but the car went on, without slackening speed, and did not stop until it reached a point between 50 and 75 yards beyond. Dennard then turned the car

around and came back in it. The witness said to him, "Let's carry Mr. Morgan to town to a doctor." Dennard replied, "No, I am góing to get a doctor." The witness then said, "He has got to get home; let's carry him now;" but Dennard said nothing else, and rode on. There was no appearance of skidding, or of anything wrong with the car, and Dennard did not mention anything wrong with it. He did not seem to have been drinking.

Dr. Dean testified, that while in his own automobile, he passed in the road an automobile which a negro boy, who, he afterwards learned, was Johnnie Dennard, was driving at the rate of about 15 or 20 miles an hour; there was nothing about the car driven by the boy that indicated that it was not in good condition. The boy did not stop or say anything to him, unless it was "Good morning," or something like that. They were both living in Dawson, and the witness had been practising medicine there 28 years, and knew the boy's father, who lived there during all that time. After they had passed each other, the witness found Morgan lying in a ditch at the side of the road, bruised in several places and bleeding. The road there was 35 or more feet wide, and he was at the right side going from town. He must have been 10 feet at least from the right-hand rut in the road where the traveling is done. Morgan called attention to the automobile track and showed the place where he was struck. The witness saw where the automobile turned out of the rut on the left side of the road, about 30 or 40 yards back from the place at which Morgan said the automobile struck him, and the track where it turned was perfectly straight, with no indication of wabbling. The track, after the car got to the place where Morgan was struck at the side of the ditch, made a kind of turn and went directly on up the road. An automobile could be turned around anywhere in that road.

Mack Brown testified that he arrested Dennard about 40 minutes after Morgan was struck by the automobile, and that he had it examined and tested in his presence to see if the steering-gear was all right; that the steering-gear and the brakes were all right, and the car was in good condition. This witness testified also as to the tracks of the automobile at the scene of the injury, and his testimony on this subject accorded substantially with that of the preceding witness. Morgan testified that no automobile passed after he was struck, until Dr. Dean got to him.

The accused, in his statement at the trial, denied that he was driving the automobile when it struck Morgan. He stated that Nelson was driving it at that time, and that it had been skidding and was "out of fix;" that he, and not Nelson, picked up Morgan; that when he passed Dr. Dean in the road he did not know it was Dr. Dean, and that he was trying to get a doctor for the injured man when he was arrested. Nelson, in rebuttal, contradicted the statement that he drove the car.

*M. J. Yeomans,* for plaintiff in error.

*B. T. Castellow, solicitor-general, R. R. Arnold,* contra.

ROAN, J. This defendant was convicted under an indictment charging him with assault with intent to murder, in that he ran an automobile against and over one W. H. Morgan on a public road, with intent to kill him. The motion for a new trial was based solely upon the statutory grounds, that the verdict was contrary to law, and to the evidence, etc.

This is a very peculiar case. It is not shown that the defendant had any ill feeling for the man alleged to have been assaulted; no reason appears why he should have wished to run the man down on a public highway; there is no evidence that the machine became unmanageable or skidded, and no explanation of his conduct is apparent unless it was actuated by a reckless disregard of human life. The presumption of malice may arise from a reckless disregard of human life; and "there are wanton or reckless states of mind which are sometimes the equivalent of a specific intent to kill, and which may and should be treated by the jury as amounting to such intention when productive of violence likely to result in the destruction of life, though not so resulting in the given instance." *Gallery* v. *State,* 92 *Ga.* 464 (2) (17 S. E. 863). And see *Collier* v. *State,* 39 *Ga.* 31, 34. There is no complaint that the court failed to submit the case fairly to the jury. The questions to be determined were purely questions for the jury; and, the trial judge having approved their verdict, we are not prepared to hold that he committed reversible error in so doing. *Judgment affirmed.*