23648. EASLEY *v.* THE STATE.

Decided June 21, 1934.

*Otey B. Mitchell, Jesse B. Simmons, George J. Holtman Jr.,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, John H. Hudson,* contra.

Guerry, J. Luther Easley was indicted for the offense of assault with intent to murder, L. H. Satterfield being the victim. The defendant was convicted, and, his motion for a new trial being overruled, he excepted. The indictment charged that the defendant "did, with an automobile, assault, strike and injure L. H. Satterfield, and did drive said automobile over, against and upon the said L. H. Satterfield, with a reckless disregard for human life and

for the life of L. H. Satterfield, which reckless disregard was the equivalent of an intent to kill and murder the said L. H. Satterfield." The indictment further sets out that the defendant was operating said car along Marietta street in the city of Atlanta in violation of the law with reference to passing street-cars and speed. The State's case rests mainly on the testimony of two witnesses. They are Satterfield, the prosecutor, and Carter, a street-car motorman. Satterfield was struck and run over by a car driven by the defendant. The place of the accident was at the intersection of Peachtree and Marietta streets in the city of Atlanta. His testimony shows that the defendant was driving down Marietta towards Peachtree at a rate of speed of approximately 40 miles per hour. There was a street-car coming in the same direction, and just before it came to its usual stopping place it began to slow down to take on passengers that had gathered out in the street, and the defendant, instead of bringing his car to a stop as he was required to do by an ordinance of the city of Atlanta, passed on by the street-car, scattering the people that had gathered for the purpose of boarding the same, and drove on down to the intersection, which was only a short distance from the place where he passed the street-car. The traffic signal was green, meaning that traffic in his direction could cross Peachtree, and, according to Satterfield, if the defendant had held a straight course on down Marietta, no accident would have happened, but instead, when he reached the intersection, he turned his car up on the curb and ran over him. Carter, the motorman of the alleged street-car, testified that the defendant passed him going about 20 or 25 miles per hour; that he had not brought his car to a complete stop when the defendant passed him, but that he was in the act of stopping. Although the prosecutor testified that the defendant was traveling around 40 miles per hour, other State witnesses reduce this to 15, 20, or 25. The prosecutor testified that if the defendant had kept a straight course no accident of any kind would have happened, and that it looked as if the defendant deliberately ran over him, while all other witnesses for the State and the defendant sustain the defendant's defense that he was forced to turn his car to the right and up on the curb in order to avoid hitting two ladies that had stepped out in front of his car.

The intent to do an act, where no provocation or motive appears, is necessarily hard of proof and is generally only provable by cir-

cumstantial evidence. There are certain circumstances involving the acts of one accused of a crime, from which men, from past human experience, infer his intent. If a person point a loaded gun at another and pull the trigger, he will be presumed to have intended to shoot that person. Sometimes the element of provocation appears to explain the act of one accused of crime. Motive, in most crimes, appears as the vehicle of intent, and where motive to do an act is proved, and that act is done, a jury would, of course, be authorized to find that the accused was moved by such motive and that it was his intent to commit the crime. In the offense of assault with intent to murder there must be malice and a specific intent to kill the person assaulted. The law does not presume an intent to kill from the unlawful use of a deadly weapon, unless death actually results; and in the latter case this is true because the law presumes that every person of rational and ordinary judgment intends the ordinary consequences of his acts. Where death does not occur, the law does not reach into the realm of speculation and presume that the defendant intended that which did not occur. It is true that from the use of a weapon likely to produce death, in a manner likely to have that result, malice will be presumed, as malice may be inferred from the infliction of the slightest injury, even though the weapon used was not one likely to produce death. However, malice, where no killing takes place, does not necessarily include an intention to kill, for any intention to inflict slight injury on another is necessarily infected with malice, but there would not be at the same time an intent to kill that person. If death had ensued and the defendant could not have been convicted of murder, then he can not be convicted of assault with intent to murder.

Aside from the elements that we have pointed out above that go to show intent to do a certain act, our courts have adopted and sanctioned the rule of law that "there are wanton or reckless states of mind which are sometimes the equivalent of a specific intention to kill, and which may and should be treated by the jury as amounting to such intention when productive of violence likely to result in the destruction of life though not so resulting in the given instance." *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 863). This principle was applied in *Dennard* v. *State,* 14 *Ga. App.* 485 (81 S. E. 378). The facts in that case showed that the person as-

saulted was walking along a public highway and that the defendant approached him from behind in an automobile, and that although the person assaulted was some few feet from the road, the defendant's car turned and ran over him, inflicting severe injuries. No provocation or motive appeared and no reason was given why the car was turned to the side of the road, striking the prosecutor. Judge Roan said: "This is a very peculiar case. It is not shown that the defendant had any ill feeling for the man alleged to have been assaulted; no reason appears why he should have wished to run the man down on a public highway; there is no evidence that the machine became unmanageable or skidded, and no explanation of his conduct is apparent unless it was actuated by a reckless disregard for human life." In *Chambliss* v. *State, 37 Ga. App.* 124 (139 S. E. 80), this principle was again applied where the evidence disclosed that the defendant, together with another negro man and two women, was driving a red Buick automobile at the rate of 50 or 60 miles per hour, and attempted to pass a Ford car at a wide place in the road where three or four cars could travel abreast, and, although the Ford car was as near the edge of the road as it could get, the defendant hit the Ford car, turning it over and causing injury to the occupants thereof. Luke, J., following the *Dennard* case, supra, said: "There was ample evidence to authorize the jury to find that the defendant, while under the influence of intoxicating liquor, was driving his car at an unlawful rate of speed, in a reckless manner, and with utter disregard of the lives and safety of others."

We have been extremely doubtful whether such a rule of law as announced in the *Dennard* case, supra, should be applied in a case where practically all the evidence shows that the accident was merely unfortunate. However, the jury were authorized to take the testimony of the prosecutor as being the truth of the transaction, and his evidence shows that the accused was operating his automobile in a reckless and unlawful manner, from which facts we think, under the rule above stated, the jury would be authorized to find the circumstances of the occasion illustrated a wanton and reckless disregard for human life, which would supply the intent necessary to a conviction of assault with intent to murder. Had we been among the members of the jury we might have held to a different verdict, but, the duties of our office are different from

those of the jury, and we are bound by their findings of fact that are supported by any evidence. There may be some distinctions between the cases cited above and the case here to be decided, in the facts of each case, but we admit that we would obtain no judicial comfort from any that we have been able to see. There is a line of decisions that appears to be in conflict with this ruling. They are *Springer* v. *State,* 37 *Ga. App.* 154 (139 S. E. 159), where the facts are somewhat similar to those in the *Dennard* case, supra, but the court held that in the *Springer* case there was no evidence to show any intent to commit the crime; *Smith* v. *State,* 39 *Ga. App.* 552 (147 S. E. 781), where the court held that the fact that the accused was operating a car at a "rapid" rate of speed and came out from behind a truck and struck the car of another showed no intention to kill; *Neese* v. *State,* 40 *Ga. App.* 503 (150 S. E. 451), where the facts are not reported; *Gresham* v. *State,* 46 *Ga. App.* 54 (166 S. E. 443), where the court held: "The evidence authorized a finding that the accused, *while under the influence of intoxicating liquors* [italics ours], drove his automobile against Charlie Arnett and seriously injured him. However, there was no evidence, either direct or circumstantial, adduced upon the trial that authorized the jury to find that the defendant drove the car against Arnett *with the intent to kill him.*" We hesitate to disagree with the conclusion reached in that case, but we feel it to be unquestionably true that if one knows that he is drinking, and further knows that in certain states of intoxication he will be unable to properly manage his car (and we think one imbibing the spirits would be charged with such knowledge), but nevertheless operates his car, and in the operation thereof injures another, a jury would be authorized to find that he was guilty of that wanton and reckless disregard of human life which our law says is equivalent to a specific intent to kill. We are, therefore, of the opinion that the verdict of the jury was authorized.

■ There is no merit in any of the amended grounds of the motion for new trial. The court, therefore, did not err in overruling the motion for new trial.

*Judgment affirmed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. "A specific intent to kill is an essential ingredient of the offense of assault with intent to commit murder, and the indictment should allege such intent." *Wright* v.

*State,* 168 *Ga.* 690 (148 S. E. 731). It follows that where such an intent is alleged in the indictment (as it was in the instant case), the burden is on the State to prove the specific intent to kill the person named in the indictment as having been assaulted. In this case the evidence did not authorize a finding that the defendant, when he struck the policeman with an automobile, did so with the specific intent to kill him. On the contrary, the evidence demanded a finding that he had no such intention. The evidence authorized a verdict of assault and battery, but not the verdict returned. See *Springer* v. *State,* 37 *Ga. App.* 154 (supra).