31310.   PAYNE *v.* THE STATE.

Decided December 4, 1946.   Rehearing denied December 19, 1946.

*John B. Morris, W. L. Hailey,* for plaintiff in error.

*R. Howard Gordon, Solicitor-General, William Hall,* contra.

MacIntyre, J. █ We are satisfied that the jury were warranted in concluding from the evidence that the defendant, while under the influence of some intoxicant, drove his automobile over a public highway of this State at a rate of speed greater than fifty-five miles per hour, in violation of the speed law of Georgia, and over a street in the City of Lavonia in violation of the ordinance of that city prohibiting the driving of motor vehicles at a rate of speed greater than thirty miles per hour, past a stop sign and into a broad street intersection in a business part of said City of Lavonia, without blowing his horn, or putting on his brakes or slowing down or stopping before entering said intersection; and that he ran into the right side of an automobile driven by M. R. Shirley at a time when said intersection was clearly visible to the defendant, and hurled Shirley's car fifty-nine feet down the highway which the defendant was traveling, and injured one of the occupants of Shirley's car slightly and another occupant of said car so seriously that he was practically unconscious for eleven days and completely lost his mind.

We think that the facts of this case bring it well within the following rule: "The presumption of malice may arise from a reckless disregard of human life; and 'there are wanton or reckless states of

mind which are sometimes the equivalent of a specific intent to kill, and which may and should be treated by the jury as amounting to such intention when productive of violence likely to result in the destruction of life, though not so resulting in the given instance. *Gallery* v. *State,* 92 *Ga.* 464 (2) (17 S. E. 863).'" *Dennard* v. *State,* 14 *Ga. App.* 485, 488 (81 S. E. 378). The facts in the *Dennard* case disclose that the defendant, approaching the person assaulted from the rear, turned and struck said person when he was a few feet from the road and seriously injured him. In that case the court stated that the indictment charged the defendant with assault with intent to murder, "in that he ran an automobile . . over one W. H. Morgan on a public road, with intent to kill," and that the motion for a new trial based solely on the statutory grounds was overruled. On page 488 of that decision the court also said: "This is a very peculiar case. It is not shown that the defendant had any ill feeling for the man alleged to have been assaulted; no reason appears why he should have wished to run the man down on a public highway; there is no evidence that the machine became unmanageable or skidded, and no explanation of his conduct is apparent unless it was actuated by a reckless disregard of human life."

In *Chambliss* v. *State,* 37 *Ga. App.* 124 (139 S. E. 80), the court quotes from the *Dennard* case, supra, as follows: "'A reckless disregard of human life may be the equivalent of a specific intent to kill; and whether it existed in this case was a question for the jury.' And in the opinion in that case (p. 488) it is said: 'The presumption of malice may arise from a reckless disregard of human life;' and 'there are wanton or reckless states of mind which are sometimes the equivalent of a specific intent to kill, and which may and should be treated by the jury as amounting to such intention when productive of violence likely to result in the destruction of life, though not so resulting in the given instance.'" And in the *Chambliss* case the court in its concluding paragraph stated: "There was ample evidence to authorize the jury to find that the defendant, while under the influence of intoxicating liquor, was driving his car at an unlawful rate of speed, in a reckless manner, and with utter disregard of the lives and safety of others. It supports the verdict rendered." In *Myrick* v. *State,* 199 *Ga.* 244, 248 (34 S. E. 2d, 36), *Gallery* v. *State,* supra, *Dennard* v. *State,* supra, and *Chambliss* v. *State,* supra, are cited with approval. In this connec-

tion, see *Powell* v. *State,* 193 *Ga.* 398 (18 S. E. 2d, 678). *Huntsinger* v. *State,* 200 *Ga.* 127 (36 S. E. 2d, 92), and *Smith* v. *State,* 200 *Ga.* 188 (36 S. E. 2d, 350), cited by the defendant, distinguish the line of cases where the defendant was running at a reckless rate of speed in an intoxicated condition, and the case then under consideration in which the defendant was not in an intoxicated condition.

The instant case comes within the rule stated under that line of cases where the defendant was in an intoxicated condition. The jury here was authorized to find the defendant guilty of assault with intent to murder

■ The judge charged the jury as follows: ("The offense charged in the indictment is that of assault with intent to murder. Murder is the unlawful killing of a human being, in the peace of the state, by a person of sound memory and discretion, with malice aforethought, either express or implied. An assault with intent to murder is an assault with a weapon, as it is used at the time, is likely to kill, and an assault without justification or mitigation, and an assault under such circumstances that, if death had resulted, it would have been murder, also with the intent and purpose on the part of the assailant at the time of the assault to kill and murder the person assaulted.")

["The specific intent to kill is an essential ingredient of the offense of assault with intent to murder. The law does not impute the intention to kill where death does not ensue.

"Intent is a question for the jury and is ordinarily ascertained by acts and conduct, and the law presumes every unlawful act to have been criminally intended unless the contrary appears. Intent, gentlemen, may be shown in many ways, provided the jury find it existed from the evidence produced before them. It may be inferred from the proven circumstances or by acts and conduct, or presumed when it is a natural and necessary consequence of the act.

"Gentlemen, there are wanton and reckless states of mind which are sometimes equivalent to a specific intent to kill, and which may, and should be, treated by the jury as amounting to such intention when such violations of law are likely to produce death."]

"I want to read to you now the definition of a crime in this State and I am reading from the Code of the State of Georgia. Here is the definition of a crime: A crime or misdemeanor shall

consist in a violation of a public law in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence."

In special ground 1, the defendant excepts to the part of the charge above quoted enclosed in brackets. The principal assignment of error in his special ground 1 is that the court "instructed the jury in said charge that intent was presumed when it is a natural and necessary consequence of the act," in violation of the well-known rule laid down in *Gilbert* v. *State,* 90 *Ga.* 691, 692 (1) (16 S. E. 652), that the existence of an intent to kill in a case of assault with intent to murder "is matter of fact to be ascertained by the jury from all the evidence before them, and not matter for legal inference or presumption from only a part of the evidence, or even from the whole of it."

In view of the explicit statement contained in this excerpt enclosed in brackets, that "the law does not impute the intention to kill where death does not ensue," and the further instruction that "intent is a question for the jury," and considering the charge as a whole, the objection urged is not ground for a new trial.

Neither do we think that there is any merit in subsection (b) of special ground 1, which alleges that the charge was "misleading and confusing to the minds of the jury, because said charge mixed and mingled the law of murder with that of assault with intent to murder on the issue of intent."

In subsection (c) of the above ground, it is insisted that "said charge wherein the court instructed the jury that the law presumes every unlawful act to have been criminally intended unless the contrary appears was incorrect," and eliminated the defendant's contention "that the injury was unintentional on his part." The court charged the defendant's main defense fully and fairly, and there was no request for any additional charge, and the charge was not erroneous for the reason above stated or for any other reason set out in subsection (c) of special ground 1.

Subsection (d) of this special ground is essentially the same as that contained in the first subsection of that ground, and there is no merit in that objection.

■ The principal criticism made in special ground 2 to the part of the above-quoted charge enclosed in parentheses is that "the court failed to instruct the jury that such intent to kill would have

to be done with malice, either express or implied." It is also insisted that the above charge eliminated the contention of the defendant that the injuries inflicted were unintentional and done wholly without malice. The charge as a whole was sufficient to convey the meaning and application of the principles of law which these objections urged were eliminated. This special ground shows no cause for reversible error.

■ In special ground 3, the exception is that the charge "excluded from the minds of the jury all proven facts established by the defendant's witnesses." This ground is not meritorious.

■ In special ground 4, exception was taken to the failure of the court to charge accidental homicide known as Code, § 26-404. No request was made for such an instruction.

The failure of the judge in an assault with intent to murder case to charge the jury the provisions of this Code section—"A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect"—in express terms, when it clearly appears from the charge that the jury were informed that, if they found the contentions of the accused which were stated with reference to the concrete to be true, they must return a verdict of not guilty, will not be reason for granting a new trial. *Nix* v. *State,* 120 *Ga.* 162 (47 S. E. 516); *Gilstrap* v. *State,* 72 *Ga. App.* 172 (2) (33 S. E. 2d, 525); *Martin* v. *State,* 57 *Ga. App.* 346 (195 S. E. 313); *Cox* v. *State,* 105 *Ga.* 610 (31 S. E. 650).

The defendant contends here that his negligence, if any, was not the proximate cause of the collision, but that the negligence of the driver of the other automobile involved in the collision, in driving his car into the intersection of the streets in question, was the sole proximate cause of the collision, but did not request a charge on accident. *Travelers Ins. Co.* v. *Anderson,* 53 *Ga. App.* 1 (184 S. E. 813); *Webb* v. *State,* 149 *Ga.* 211 (8) (99 S. E. 630); *Savannah Electric Co.* v. *Jackson,* 132 *Ga.* 559, 563 (64 S. E. 680); *Mangum* v. *State,* 5 *Ga. App.* 445 (2) (63 S. E. 543).

The instant case is differentiated from that of *Smith* v. *State,* 200 *Ga.* 188 (supra), in that there the language of the charge, when considered as a whole, was not sufficient to convey the meaning and application of the Code, § 26-404, whereas in the instant case the

charge as a whole was sufficient to convey the meaning and application of the principles of such Code section.

■ In special ground 5, error is alleged because the court allowed Tom Ed Maxwell to testify that in his opinion Shirley had the right of way at the intersection. The witness stated the facts on which he based his conclusion. Even if it was erroneous to admit such evidence, it is also true that State Trooper Joe Brown testified that he thought Shirley's automobile had the right of way, and the record shows no objection to Brown's testimony. We hold that the ground is not meritorious.

■ There is no merit in the contention in special ground 6 that the court erred in failing to charge the law of involuntary manslaughter in the commission of a lawful act in an unlawful manner. The court charged the law of assault and battery, the lesser offense, as well as the law of assault with intent to murder.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, J. One of the contentions in ground 1 of the motion for rehearing is that the evidence did not authorize a finding by the jury that the defendant was in an intoxicated condition at the time of the occurrence in question. On direct examination, Dwight Adams testified relative to the question of intoxication of the defendant in part as follows: "I drove with Trooper Brown to Royston and carried him to the hospital [of Dr. S. D. Brown] over there on orders to see about the boy and brought him back to Lavonia and charged him with reckless driving and held him. He didn't seem like a drunk man, but you could detect the odor of intoxicants on him—I smelled the odor of intoxicants." On cross-examination, Adams testified in part: That "I couldn't tell what Mr. Payne had had to drink by the smell of whisky on him, but it was an intoxicant. It could have been whisky and it could have been home brew. It had no special odor that I could detect; I say it was an intoxicant of some kind. I smelled no special odor and could not tell whether it was whisky, wine or beer, or home brew— I think it was intoxicants. It smelled fermented like you will find on anybody's breath who has been drinking; it had that odor on it —a sour odor. I couldn't tell you whether it was whisky; it smelled like some intoxicants. I don't know whether whisky is fermented—I said it was intoxicants. I don't know if wine is a

fermented drink—you are telling me something. Beer may be fermented and whisky may be a distilled drink. You are telling me something—I guess it is right. I couldn't tell you if the odor I smelled was something like wine. Apparently from his conduct he was normal; he carried himself well and rode with us to Royston and back. He was excited like most people would be who had been in an accident."

On direct examination, Tom Ed Maxwell testified in part: That he was at a filling station on a corner of the street intersection and saw the collision. "I saw Payne after his car struck Shirley's car. I didn't see him take a drink, but I smelled it on him. It was twenty or twenty-five minutes after the cars hit that I smelled whisky on Payne, I guess. Payne got cut some place on his head and hand. I am not related to any of these parties." On cross-examination, Maxwell testified in part: "And I said I smelled whisky on him. He wasn't as drunk as I have seen them, but he smelled of whisky. I am qualified to state that that was a whisky smell—I know that pretty well. I identified the odor I smelled as being whisky on him. I don't know what kind of whisky; it might have been corn whisky and it might have been sugar whisky. You can tell the difference when it is made with syrup when you drink it. If it is brown, you can tell when you smell it. I determined that was sugar whisky. He wasn't staggering. I seen him walk—he staggered and I thought he was hurt. When I saw him, he was hurt. There were cut places and blood on his face and hands. His teeth looked like they were broke or knocked loose and he had blood on his mouth."

On direct examination, Dr. S. D. Brown, a practicing physician, testified in part: "I saw Mr. Payne, the defendant, when he came to the hospital for treatment. He had a cut lip and I sutured his lip for him. I had an opportunity to observe his condition as to whether he was drinking. I would say that Mr. Payne was drinking; I would not say that Mr. Payne was drunk, but it was evident he had had something to drink. I would say that he had something to drink." On cross-examination, Dr. Brown testified in part as follows: "I talked to Mr. Payne, the defendant. He also was injured. I treated him. He had a cut lip and I sewed it up for him. He was able to walk, but it was evident he had had something to drink. I made a notation on my pad in case trouble came

up and there was a court case of it, and this morning I talked with the nurse who helped me during Mr. Payne's treatment, and I put a notation on my record that he was intoxicated. Now, he wasn't drunk; he was able to walk around, but it was evident that he had something to drink; you could smell it on his breath, and I went into that very thoroughly to be sure that was the case. As I say, I made a notation on the book, that note of his condition. As I say, a man could stand up and walk and talk and his mind was clear, but you could smell liquor on his breath. I smelled alcohol on his breath. I would not be able to tell whether it was corn liquor, beer or what. I have drunk mighty little corn liquor; I have drunk mighty little rye liquor. I am familiar with the breath, and this man had had some drinks, I would say. I have been a practicing physician for several years. I frequently see patients under the influence of whisky." Among the patients carried to Dr. Brown's hospital after the wreck was the defendant; Dr. Brown testified in part as follows: "I don't know whether Mr. Payne remained there about an hour or two hours before that or not; I did not see him until I had finished the other case. I imagine it was after dark; the patients got in there about dark or late in the afternoon, and it may have been eight or nine o'clock when I got to Mr. Payne, as well as I remember it. I remember making an entry on a piece of paper at the time that I examined him—I made a notation 'intoxicated.' That was my diagnosis. I arrived at my diagnosis that he had had a drink from the odor on the patient's breath, and I was very close to his breath when I was sewing up his lip. He could walk and he could talk with a clear mind, but he did have a distinct odor on him which you get from intoxicating drinks."

In addition to the quoted testimony of Tom Ed Maxwell, Dwight Adams, and Dr. S. D. Brown, it appears from the testimony that after the collision those injured therein, among whom was the defendant, were taken to the hospital of Dr. S. D. Brown and there treated by him. Dr. Brown did not see the defendant until he had finished the other cases of injuries resulting from the collision. He did not know whether it was an hour or two hours before he was able to treat the defendant for his injuries. Dr. Brown at that time diagnosed the defendant's condition as "intoxicated," and he made an entry on a piece of paper at the time to the effect that the defendant was intoxicated.

"Where the answer of the witness was that the defendant was under the influence of intoxicating liquor, the jury were authorized to say, that since the observed matter in issue could not be so fully and accurately described as to put the jury completely in the witness's place and enable the jurors to draw the inference equally as well as the witness, they preferred to determine the condition of the defendant from the direct answers of the witness who observed him, rather than from the subsequent description of his condition by the witness." *Donley* v. *State*, 72 *Ga. App.* 429, 431 (33 S. E. 2d, 925).

It is the prerogative of the jury in arriving at a conclusion upon disputed issues of fact to believe certain parts only of the testimony of each witness, and reject other parts of his testimony, and combine these parts only with other parts only of the testimony of other witnesses, and reject other parts of the testimony of each of the other witnesses, it being their duty to ascertain the truth of the case from the opinion they entertain of all the testimony submitted for their consideration. We think, under these rules, that the jury was authorized to find that the defendant at the time of the collision in question was in an intoxicated condition. *Reaves* v. *Columbus Electric & Power Co.*, 32 *Ga. App.* 140, 151 (122 S. E. 824); *Wilson* v. *State*, 9 *Ga. App.* 297 (2) (70 S. E. 1125); *Goldsmith* v. *State*, 54 *Ga. App.* 268 (187 S. E. 694); *Sutton* v. *State*, 123 *Ga.* 125, 127 (51 S. E. 316).

The testimony of the witnesses that the defendant at the time of the collision was operating his automobile at a speed of fifty-five to sixty miles per hour, and the physical facts testified to by witnesses who were at the scene of the collision at the time it occurred and shortly thereafter, authorized a finding that the defendant was driving his car at a speed in excess of fifty-five miles per hour.

This and all other matters in the motion for a rehearing have been considered; each and every ground of the motion for a new trial, both general and the six special grounds, were ruled on in the opinion; the motion for rehearing is

*Denied.* *Broyles, C. J., and Gardner, J., concur.*