JACKSON *v*. THE STATE.

No. 16266.   JULY 15, 1948.

48

*Louis H. Foster* and *Charles F. Richter*, for plaintiff in error.
*Eugene Cook, Attorney-General, Maston O'Neal, Solicitor-General,* and *Wright Lipford, Assistant Attorney-General,* contra.

ANDERSON, Judge. ■ The general grounds of the motion for new trial are insisted upon, at least *pro forma.* The question as to whether or not the evidence was such as to authorize the jury to convict the plaintiff in error of murder is, we think, the controlling question in the case.

The offense of murder may be committed when there is no actual intent to kill. In this case, no actual intent to kill and no real motive for a homicide appeared. However, the statutory definition of involuntary manslaughter (Code, § 26-1009) provides that an involuntary homicide may be murder where such involuntary killing shall happen in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being. In addition to this statutory provision, we have the well-established doctrine that every person is presumed to intend the natural and probable consequences of his conduct, particularly if that conduct be unlawful and dangerous to the safety or lives of others. We have also another doctrine kindred thereto, and probably arising from the same general considerations of law, which shows itself in many decisions of this court, and of the Court of Appeals of this State, to the effect that, "There are wanton or reckless states of mind which are sometimes the equivalent of a specific intention to kill, and which may and should be treated by the jury as amounting to

such intention when productive of violence likely to result in the destruction of life, though not so resulting in the given instance." *Gallery* v. *State,* 92 *Ga.* 463, 464 (2) (17 S. E. 863). See also *Myrick* v. *State,* 199 *Ga.* 244 (1) (34 S. E. 2d, 36). The *Gallery* case is also authority for the proposition that, where death does not result from the unlawful act of the person charged with the offense of assault to murder, no presumption of an intent to kill will arise, but that, when murder is charged, and the proof shows that an actual homicide was committed, a presumption of an intent to kill may arise and the prisoner may be convicted of murder, although the presumption of the intent to kill is contrary to the actual facts of the case.

In consequence of these principles, some statutory as we have indicated, and others derived from the decisions of the courts, many convictions of the offense of assault to murder by the use of an automobile, even when there was no intention to kill, in the popular sense, have been sustained, without the aid of any legal presumption of an intent to kill. Some of these cases are the following: *Dennard* v. *State,* 14 *Ga. App.* 485 (81 S. E. 378); *Chambliss* v. *State,* 37 *Ga. App.* 124 (139 S. E. 80); *Easley* v. *State,* 49 *Ga. App.* 275 (175 S. E. 23); *Payne* v. *State,* 74 *Ga. App.* 646 (40 S. E. 2d, 759).

In the application of the same principles, this court has, usually by divided opinions, affirmed several convictions of murder in the use of an automobile, where there was no real intent to kill, but where the intent to kill was derived from some of the principles which we have hereinbefore announced. Some of these cases are the following: *Butler* v. *State,* 178 *Ga.* 700 (173 S. E. 856); *Jones* v. *State,* 185 *Ga.* 68 (194 S. E. 216); *Meadows* v. *State,* 186 *Ga.* 592 (199 S. E. 133); *Vaughn* v. *State,* 193 *Ga.* 282 (18 S. E. 2d, 469); *Powell* v. *State,* 193 *Ga.* 398 (18 S. E. 2d, 678); *Josey* v. *State,* 197 *Ga.* 82 (28 S. E. 2d, 290). One very interesting case which was decided upon the pleadings, wherein the lower court was reversed, is that of *Wright* v. *State,* 166 *Ga.* 1 (141 S. E. 903). In that case, Mr. Justice Gilbert wrote a specially concurring opinion, and Mr. Justice Hines wrote a dissenting opinion. Some of the cases in which reversals of convictions of murder by the use of an automobile upon the public highway have occurred are: *Ivey* v. *State,* 191 *Ga.* 461 (12 S. E. 2d, 879);

*Huntsinger* v. *State,* 200 *Ga.* 127 (36 S. E. 2d, 92), in which Mr. Justice Atkinson wrote a most interesting specially concurring opinion; and *Smith* v. *State,* 200 *Ga.* 188 (36 S. E. 2d, 350). In the *Ivey* case, supra, the decision of the court was unanimous; in the other two cases, there were dissenting opinions.

In all cases presented to this court, wherein the general grounds of the motion for new trial are insisted upon, the court is bound to approach the question as to whether the evidence supports the verdict with great consideration of the action of the trial judge in approving the verdict found by the jury. The trial judge is invested with discretion in passing upon motions for new trial, and it is his duty to grant a new trial if he considers the verdict against the weight of evidence, though there be some evidence to support, and it is likewise his duty to grant a new trial, particularly in a criminal case where the liberty of citizens is involved, if its appears that the ends of justice so require.

The general rule undoubtedly is that, where there is some evidence to support the verdict found by the jury, and where the verdict found by the jury has been approved by the trial judge, manifested by his overruling of the motion for new trial upon the general grounds, "we are bound to conclude that . . the judge exercised the sound discretion which the law wisely placed in his hands," and this court will be reluctant to interfere. *Meadows* v. *State,* 186 *Ga.* 592 (3) (199 S. E. 133); *Josey* v. *State,* 197 *Ga.* 82, 93 (28 S. E. 2d, 290).

Substantially all of the contentions of the State, save that the defendant was driving under the influence of intoxicants, stand undisputed in the record. The defendant made a statement in which he virtually admitted his guilt of involuntary manslaughter in the commission of an unlawful act, but denied his guilt of murder and denied that he was under the influence of intoxicating liquor at the time.

The fatal collision occurred about 8 o'clock on the morning of August 9, 1947, on a paved highway designated as State Highway No. 38 and U. S. Highway No. 84, being the main and only paved highway between Cairo and Thomasville, Georgia, at a point about two and one-half to three miles east of Cairo. The deceased, Ed Farnell, was riding on the front seat of an automobile driven by Paul E. VanLandingham. The deceased's wife and

Miss Pauline Harrell were in the rear seat. This automobile was proceeding on its right side of the highway in an easterly direction toward Thomasville. An automobile driven by one Ed Godwin and an automobile being driven by the plaintiff in error and immediately following the Godwin automobile were approaching from the opposite direction along the opposite side of the highway. A woman and a small child were passengers in the plaintiff in error's automobile. As the automobile in which the deceased was riding and the automobile driven by the witness Godwin were approaching one another, the plaintiff in error suddenly drove his automobile to the left out of the line of traffic in which he had been traveling, over to his left side of the highway and into the path of the oncoming VanLandingham automobile. A collision between the automobiles driven by VanLandingham and the plaintiff in error then became imminent and inevitable. The plaintiff in error claims that when he saw the situation he pulled his automobile further to his left in an effort to cross over in front of the VanLandingham automobile and thus avoid the collision. At the moment of impact the front wheels of the plaintiff in error's automobile were off his left side of the paved portion of the highway and on the shoulder with the rear wheels remaining on the pavement, and the VanLandingham automobile was on its right edge of the pavement. The front end of the VanLandingham automobile and the right side of the plaintiff in error's automobile came together; the plaintiff in error's car overturned, killing the woman occupant, but apparently not injuring the child or the plaintiff in error, certainly not seriously; the VanLandingham car remained upright, but Farnell was thrown into the dashboard and suffered injuries from which he died five or six days later. The evidence does not show, with any degree of clarity, the nature of the injuries, if any, to the other occupants of the VanLandingham automobile.

It appears that at the moment of impact the VanLandingham automobile was meeting and almost alongside the Godwin automobile, and that the front end of the plaintiff in error's automobile had gotten about to the rear of the Godwin automobile. The driver and occupants of the VanLandingham automobile were guilty of no negligence and were helpless in the situation.

Shortly before the fatal collision, and within sight of the scene, the plaintiff in error had endeavored to pass the Godwin automobile but was prevented from so doing and was forced back into the line of traffic by an approaching milk or ice-cream truck. The evidence and statement of the plaintiff in error upon the trial, while not entirely clear, make it appear that this incident occurred immediately before the fatal collision. In fact, counsel for plaintiff in error make the observations in their brief: "We see the plaintiff in error looking at the oncoming truck attempting to go around in front of the traffic and seeing that he does not have à clearance between him and the truck, his attention is attracted to the truck, and after falling back in line, he looks at the truck as it passes him and does not see the car that is behind the truck in time to avoid the collision."

There is no evidence that the plaintiff in error at any time violated the law regulating the speed of vehicles, but the evidence does show that while traveling along this highway he drove up behind the Godwin automobile at one point several miles removed from the scene of the fatal collision, that he came up "quick" and was traveling at "a great speed," estimated at 50 or 55 miles per hour; that he then dropped back out of sight and later, shortly before the fatal collision, again came up behind the Godwin automobile.

The State contends that at the time of the collision the plaintiff in error was under the influence of intoxicating liquor; this the plaintiff in error denied in his statement. His counsel in their brief state that, "There was some evidence that the plaintiff in error was under the influence of intoxicants which was opinionated in his [its?] character."

That a person was under the influence of intoxicating liquor at a certain time may be proved by indirect as well as by direct evidence; opinion evidence is material and has a direct probative value on the question of intoxication. *Meadows* v. *State*, supra (page 597). See, in this connection, *Butler* v. *State*, *Powell* v. *State*, and *Payne* v. *State*, all supra.

The physician who observed and attended all parties to the fatal collision upon their arrival at the hospital stated that in his opinion the plaintiff in error was under the influence of intoxicants at the time. This evidence was corroborated by the

testimony of the Sheriff of Grady County and by the testimony of a State patrolman, both of whom observed and talked to the plaintiff in error shortly after the collision. All of the evidence relating to this subject, taken together and standing unexplained and undisputed except by the statement of the plaintiff in error upon the trial in which he said, "I was not drinking and I was [sic] not drunk anything," fully warranted a finding by the jury that the plaintiff in error was, at the time of the collision, driving an automobile while under the influence of intoxicating liquors.

The plaintiff in error introduced no evidence upon the trial, and his only explanation of the fatal collision was made in his unsworn statement. As this statement is very brief, it is set forth here in its entirety: "I went overseas in 1943 the first day of January and I got wounded in 1945 the 8th day of March on the main of New Guinea. I got shot on patrol just as I was fixing to go on patrol. I went to the hospital in San Francisco and I went to Lawson General in Atlanta. I got a discharge with 100 percent disability. The way the accident happened, I was coming out of Albany, I stopped and got some gas and I came on through Thomasville, and as I got along there about the Black and White, I was driving along behind a car, and I met a truck and I started to go around the car before I met the truck, and I seen the truck and I pulled in behind the car and the truck went by, and I pulled out to go around the car and I was facing the other man, and I seed I was going into him and I turned to leave off the highway where I could give him the road to keep from hitting him, but I could not get off the highway before he hit me. I wouldn't have did it for a million dollars. I ain't never been in trouble before in my life—never had no trouble with nobody and never been in jail but twice. I was not drinking and I was not drunk anything."

The proved unlawful conduct of the plaintiff in error resulting directly in the death of Farnell took place on the main highway between Cairo and Thomasville, Georgia, a highway designated not only as a State route but also as a Federal route. That it was a heavily traveled highway and that the plaintiff in error should have anticipated that there would very likely be many other cars thereon at the time and place of the collision, does not admit of dispute, the record revealing that at the very mo-

ment of the collision there were three other passenger automobiles, a large milk or ice-cream truck and, probably, a pick-up truck at or near the scene. The view of the plaintiff in error was obstructed only by automobiles traveling in a lawful and proper manner along this highway, and there is nothing to account for this fatal collision except the unlawful conduct of the plaintiff in error in violating the rules of the road and in driving an automobile on a public highway while under the influence of intoxicating liquor, and his utter indifference to the consequences. It may not be amiss to take note here of the further fact that the plaintiff in error was so driving under the stated circumstances and conditions with an artificial leg and in an automobile not specially equipped in any way for such a driver.

The facts of this case fall well within the rules laid down in the following cases, supra, and the verdict finding the plaintiff in error guilty of murder is fully supported thereby: *Powell* v. *State*, only one Justice dissenting; *Jones* v. *State*, all Justices concurring in the judgment of affirmance; *Meadows* v. *State*, only one Justice dissenting; and *Butler* v. *State*, two Justices dissenting. None of these cases has been reversed or modified, or even criticized by a majority opinion, but on the other hand, they have been consistently approved by the court and distinguished from those cases involving murder with an automobile which have resulted in reversals.

Mr. Justice Grice, in writing the opinion for the court in *Jones* v. *State*, supra (at page 73), aptly stated: "We need not here adjudge that when a person, under the influence of intoxicating liquor, speeds an automobile along a highway, the killing of a human being is a natural and probable result to be anticipated; nor conclude that the unlawful act is one which in its consequences naturally tends to destroy human life, so as to grade the homicide murder. It is enough for us to decide, as we do, that the jury may or may not so find, depending upon the facts of each particular case. The degree of intoxication, the rate of the excessive speed, the weather conditions, the density of traffic, the physical character of the roadway, the nearness to a center of population, are among the matters a jury might wish to consider in determining whether the killing was involuntary manslaughter or murder. The number of motor vehicles on our highways is

rapidly increasing. Other cars and pedestrians are to be anticipated. Our highways are narrow. It is a fact well known to every observing person that drunken drivers constitute a menace. They render travel unsafe. For them to have collision with other cars is a frequent occurrence. The finding of the jury necessarily means that under the facts of this case the defendant, driving a car on a public highway at an excessive rate of speed, while under the influence of liquor, contrary to our laws, was engaged in an act 'which in its consequences naturally tended to destroy the life of a human being.'" A somewhat similar statement, pertinent in most aspects, is found in the specially concurring opinion of Mr. Justice Atkinson in *Huntsinger* v. *State,* supra.

No good purpose would be served by here engaging in further discussion of the principles of law controlling the cases arising under the provision of the involuntary-manslaughter statute dealing with homicides resulting from unlawful acts as they may relate to the operation of an automobile, and the diversity of opinions respecting certain fundamental aspects thereof. It is sufficient for the purposes of this decision to observe that the present case meets the test of every majority opinion on the subject. There is nothing in the majority opinions in either *Huntsinger* v. *State,* supra, or *Smith* v. *State,* supra, or in any other case decided by this court, to impel us to a different conclusion here. Under the facts and circumstances of the present case, the jury had ample grounds upon which to find, not only that the plaintiff in error was guilty of unlawful acts in their consequences naturally tending to destroy human life, done in a manner from which malice could be implied, if malice be an essential element in such cases, but also that the defendant in committing the proved unlawful acts under the existing circumstances and conditions exhibited such a wilful, wanton, and reckless disregard for human life and safety as to constitute the legal equivalent of a specific intent to kill, if that be necessary under the decisions of this court most favorable to the plaintiff in error. The writer of this opinion is not aware of any decision of this court reversing on general grounds a conviction of murder, where the party convicted was guilty of driving an automobile upon a public highway in violation of a statute prescribing a rule of the road and while under the influence of intoxicating liquors, thereby causing the death of a human being.

■ Ground one of the amendment to the motion for new trial complains of the introduction, over objection, of evidence that on an occasion three or four weeks before the homicide the plaintiff in error, while under the influence of intoxicating liquor, drove his automobile along a public street of the City of Cairo, and had a collision with another automobile. This evidence was introduced in rebuttal after the plaintiff in error had made his statement in which he said, "I ain't never been in trouble before in my life—never had no trouble with nobody and never been in jail but twice. I was not drinking and I was [sic] not drunk anything."

When this evidence was offered it was objected to on the grounds that it was evidence of a separate and distinct crime illustrating no issue in the case, that the plaintiff in error had not been convicted thereof, but the charges were still pending in the City Court of Cairo; that the evidence placed the plaintiff in error's character in evidence; and that the evidence was highly prejudicial, irrelevant, immaterial, and inadmissible.

Whether the evidence of this incident was admissible as evidence of a similar offense to show motive, intent, scheme, identity, etc., need not be decided here. A defendant's statement may be contradicted by testimony as to the facts it narrates, and his character may be as effectively put in issue by his statement as by witnesses sworn by him for this purpose. *Camp v. State*, 179 *Ga.* 292 (1) (175 S. E. 646); *Johnson v. State*, 186 *Ga.* 324 (197 S. E. 786); *Woodward v. State*, 197 *Ga.* 60 (6) (28 S. E. 2d, 480); *Barnes v. State*, 24 *Ga. App.* 372 (3) (100 S. E. 788). The evidence was clearly admissible to contradict the defendant's statement and disprove statements and claims made by him therein.

■ In ground two of the amendment to his motion for new trial, the plaintiff in error complains that the court committed error in that, at the time the evidence made the subject-matter of ground one of the amendment to his motion was admitted, the court "did not then and there nor at any time thereafter during the trial instruct the jury about the qualifications of this testimony and its failure to do so was confusing, prejudicial, misleading, and hurtful," etc. No request to charge was made to the court, and this ground is based upon the assumption that the evidence was

admitted as proof of another crime to show motive, intent, etc. As we have held, it was admissible for another purpose and it is not controlled or limited by the restrictions upon proof of other similar crimes. Furthermore, the failure of the court, in the absence of a written request to limit the application of evidence admissible for any purpose is not error, and this ground is without merit. *Central of Georgia Ry. Co.* v. *Brown,* 138 *Ga.* 107 (2) (74 S. E. 839); *Gordon* v. *Gilmore,* 141 *Ga.* 347 (3-b) (80 S. E. 1007); *Kimbrell* v. *State,* 57 *Ga. App.* 294 (4) (195 S. E. 460).

The evidence supports the verdict; and no reversible error appearing, the judgment of the trial court must be affirmed.

*Jenkins, Chief Justice, Duckworth, Presiding Justice, and Candler, Justice, concur. Atkinson, Wyatt, and Head, Justices, dissent.*