683 P.2d 1177

Kenny WATANABE, George Kishiyama, Sto Nakamura, Ken Sakato, Pat Smith and Precast Mfg. Co., an Arizona corporation, Plaintiffs-Appellants,

v.

CITY OF PHOENIX, a Municipal corporation, Defendant-Appellee.

No. 1 CA–CIV 6550.

Court of Appeals of Arizona, Division 1, Department B.

June 19, 1984.

L.J. Cox, Jr. and Cox & Cox, by Alfred S. Cox, Phoenix, for plaintiffs-appellants.

Andrew Baumert III, Phoenix, City Atty. by Edward P. Reeder, Asst. City Atty., Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Chief Judge.

This is an appeal from a judgment rendered by the trial court in a special action brought from a decision of the Board of Adjustment of the City of Phoenix. The various appellants appeal from the trial court's affirmance of the Board's denial of appellants' requests regarding their nonconforming uses.

The relevant facts are as follows. Appellants Watanabe, Kishiyama, Nakamura, Sakato and Smith operate, as they have for many years, farms with accompanying roadside stands for sale of the items raised on the farms. Adjacent to each stand is the parking area. These areas are not paved, but are gravelled to varying degrees. The court notes that by a document entitled "Supplement to the Record" filed by appellants on April 18, 1984, the appellants avow that Kishiyama and Smith have, since the filing of the reply brief, paved their parking areas as requested by the City's notices. Appellant Pre-Cast Manufacturing Co. operates a yard in which it manufactures precast concrete products. Its yard is also gravelled rather than paved. All of the above uses preceded the annexation of the properties by the City of Phoenix on March 1, 1960. It is conceded by the parties that all qualify as nonconforming uses under the city's zoning ordinance. *See* Zoning Ordinance of City of Phoenix, Sec. 106.

Section 601–B–13 of the zoning ordinance provides:

Any lot used for the parking of three or more motor vehicles ... shall ... be paved for dust control. The area of such parking lot shall be maintained 'dust free' as defined herein. This provision shall also apply to lots within newly annexed areas ....

"Dust free" is defined in Chapter II of the ordinance as:

[P]aving with one of the following methods (1) asphaltic concrete, (2) cement concrete, (3) penetration treatment of bituminous material and seal coat of bituminous binder and a mineral aggregate, or (4) the equivalent of the above as approved by the Zoning Administrator.

(Supp. 9–30–81, at 839).

Appellants concede that gravelling of their lots does not meet the above standard. All were cited by the city inspector for zoning ordinance violations.

Watanabe, Kishiyama, Nakamura and Sakato filed a joint application for variances from the dust-proofing ordinance. Smith filed a separate but similar application. Pre-Cast Concrete filed an application for a use permit to expand its nonconforming use by adding a trailer to be used as an office and therein requested that the dust-proofing condition for expansion be eliminated. All three applications were denied.

The appellants then filed a consolidated petition for special action in the superior court. The trial court rendered judgment for the city, finding in relevant part:

1. Municipal zoning ordinances are a valid exercise of police power when reasonably related to public health, safety or welfare.

2. Nonconforming uses are subject to reasonable police power regulation through zoning ordinances, including ordinances designed for the preservation of the environment and the protection of ecological values, so long as the application of such regulation does not substantially impair continued use of the property for purpose used at the time the ordinance or regulation takes effect. (A.R.S. § 9–462.02).

3. It does not exceed the jurisdiction of the City to apply the dust proofing requirements of Phoenix zoning ordi-

nance Section 601–B–13 to a nonconforming use property, so long as in so doing the City does not substantially impair or eliminate the nonconforming use.

4. The Plaintiffs Watanabe, Kishiyama, Nakamura and Sakato have not demonstrated that the Board of Adjustment acted arbitrarily, unreasonably or unlawfully in denying Application No. 1183–80 for variance from dust proofing requirement.

The Plaintiff Pat Smith has not demonstrated that the Board of Adjustment acted arbitrarily, unreasonably or unlawfully in denying Application No. 11–81 for variance from dust proofing requirement.

The Plaintiff Pre-Cast Manufacturing Company, an Arizona corporation, has not demonstrated that the Board of Adjustment acted arbitrarily, unreasonably or unlawfully in refusing to eliminate the zoning administrator's condition that its property be dust proofed as a condition to the expansion of nonconforming use through addition of a trailer.

The appellants timely filed a notice of appeal.

The issue as framed by appellants is, "Can an Arizona municipality use a zoning ordinance to require a validly existing nonconforming use to change the dust-proofing of its parking area from gravel to paving?" Appellants primarily rely on their interpretation of A.R.S. § 9–462.02, which provides in pertinent part:

Nothing in an ordinance or regulation authorized by this article [municipal planning] shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

Appellants' argument is, simply stated, that the city may not enforce any zoning ordinance which affects their existing nonconforming property. This argument is too broad.

The principle of nonconforming uses is based upon the injustice and doubtful constitutionality of compelling immediate discontinuance of the nonconforming use. *Phoenix City Council v. Canyon Ford, Inc.,* 12 Ariz.App. 595, 473 P.2d 797 (1970). While nonconforming uses existing at the time zoning ordinance became effective cannot be prohibited, they are subject to reasonable regulations under the police power to protect the public health, safety, welfare, or morals. *City of Rutland v. Keiffer,* 124 Vt. 357, 205 A.2d 400 (1964); 82 Am.Jur.2d, *Zoning and Planning,* § 179 at 689; 101A C.J.S. *Zoning and Land Planning,* § 157 at 484–485. As stated in 4 *Anderson on Zoning,* § 6.73, at 529–530:

A non-conforming use is amenable to municipal ordinances which regulate similar uses, conforming or non-conforming. A non-conforming user is not immune from safety regulations.

However, cities cannot impose zoning restrictions which make the nonconforming use economically impossible. *E.g., Orion v. Weber,* 83 Mich.App. 712, 269 N.W.2d 275 (1978).

In *Miller & Son Paving, Inc. v. Wrightstown Township,* 42 Pa.Commw. 458, 401 A.2d 392 (1979), the defendant quarry was cited for failure to fence its property. It argued "that since it has a nonconforming use it has a right to conduct its operations exactly as it did prior to the enactment of the Zoning Ordinance, including the right to continue to quarry without providing a fence." 42 Pa.Commw. at 461, 401 A.2d at 393. The court concluded that the trial court was correct in determining "that no nonconforming rights to quarry its land were interfered with by requiring Miller [the quarry] to fence its operation for the safety of the public." *Id.*

Another case closely on point is *Dock Watch Hollow Quarry Pit v. Township of Warren,* 142 N.J.Super. 103, 361 A.2d 12 (1976), where the issue as framed by the court was "the extent to which a municipality may regulate by ordinance adopted pursuant to the police power a previously declared nonconforming use of land." 142 N.J.Super. at 109, 361 A.2d at 15. There, one of the purposes of the ordinance was to insure that the quarry was run with a minimum of annoyance to neighbors from

noise and dust. The court noted the general principle of law that nonconforming uses are subject to police power regulation, "including those designed for the preservation of the environment and the protection of ecological values." 361 A.2d at 20. The court went on to evaluate several provisions of the regulation, invalidating parts regarding time limits on quarrying, but upholding other parts, including the requirement of buffer areas for the purpose of protecting the environment and aesthetic values.

Here, the purpose of dust control is obviously important for health and environmental reasons. Section 102 of the Zoning Ordinance states that the act is intended "[t]o promote the public interest, health, comfort, convenience, safety and general welfare."

Further, the paving of the parking lot has no effect upon the nonconforming use of the land for farming and/or the retail sale of farm products at the stands, and in the case of Pre-Cast, the manufacture of precase concrete items. In *Kubby v. Hammond*, 68 Ariz. 17, 198 P.2d 134 (1948), the Arizona Supreme Court defined "existing use" as the "utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose." 68 Ariz. at 24, 198 P.2d at 139. The regulation requiring paving of the farm stands/yard clearly has no effect on the existing nonconforming uses of the subject properties as they are known in the neighborhood, that is, as retail stands or manufacturing premises. *See Gear v. City of Phoenix*, 93 Ariz. 260, 379 P.2d 972 (1963). Moreover, appellants have not argued that enforcing the regulation would make their businesses economically infeasible.

 Appellants would distinguish the case law and authorities on the basis that we have a statute, A.R.S. § 9–462.02, which says, "Nothing ... shall affect existing property or the right to its continued use...." While the statute would more clearly favor appellee's argument if it said "existing use" rather than "existing property", the use of the term "existing proper-

ty" was not intended by the legislature to mean that a city may not pass any ordinance which has any physical effect on the property. As we have noted above, the purpose of allowing nonconforming uses is to prevent the injustice of forcing retroactive compliance. The function is not to protect the nonconforming use from safety regulations to which all uses must comply. The trial court properly interpreted A.R.S. § 9–462.02.

Appellants' only other cited legal authority, Attorney General's Opinion No. 65–34L R131, dated September 8, 1965, is not persuasive. First, the opinion was not construing the statute in question. But more importantly, it cites no authority for its conclusion that "it does not appear that such regulation could operate retroactively or that the board could necessarily regulate the manner, quality or workmanship of the [gasoline] storage tanks themselves." This conclusion ignores the contrary view taken by the authority previously cited. Therefore, insofar as the opinion may be interpreted as being contrary to our conclusions, we reject the opinion's reasoning that a nonconforming use cannot be regulated for safety purposes.

The trial court was limited in the special action to determining whether the Board of Adjustment (1) acted in excess of its jurisdiction or (2) acted in an arbitrary and capricious manner or abused its discretion. Arizona Rules of Procedure for Special Actions, Rule 3. *See also, Arizona Dept. of Public Safety v. Dowd*, 117 Ariz. 423, 573 P.2d 497 (App.1977). Because we conclude that there is no indication either that the Board of Adjustment of the City of Phoenix acted outside its jurisdiction or that it abused its discretion in denying the appellants' applications, we are compelled to affirm the judgment of the trial court.

Judgment affirmed.

MEYERSON, P.J., and OGG, J., concur.