541 A.2d 1321

**UNION SQUARE ASSOCIATION, INC., et al.**

v.

**MARC LOUNGE, INC., et al.**

**No. 1399, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

June 8, 1988.

John C. Murphy, Baltimore, for appellants.

John Amato, IV (Leonard J. Grossman and Goodman, Meagher & Enoch, on the brief), Baltimore, for appellees.

Argued before GILBERT, C.J., WILNER, J., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

GILBERT, Chief Judge.

### Preface

The flame that consumed the interior of the Marc Lounge has continued to flicker in the form of the burning issue of whether the Circuit Court for Baltimore City raised a dead non-conforming use, like a phoenix, from the ashes.

### The Facts

For some time, Marc Lounge, Inc., (Marc) operated a tavern at the corner of Gilmore and Lombard Streets in Baltimore City. The tavern existed as a non-conforming use in a residential zone. In April 1981 a fire destroyed the interior of the lounge and resulted in a cessation of business. Marc asserts that the business interruption was temporary and was caused by its fire insurance carrier's delay in settling the damage claim. Regardless of the reason, it was not until September 9, 1982, that Marc

obtained a permit to rehabilitate the building. The tavern business, obviously, was discontinued during that time and, in fact, the building was boarded shut. On October 14, 1982, during closure, Marc acquired title to the building.

Apparently when Marc applied for the necessary occupancy permits in 1983, they were refused. Marc then appealed to the Board of Municipal and Zoning Appeals of Baltimore City. That body, after a hearing, denied Marc's application on the grounds that the tavern's non-conforming use status had been discontinued for twelve consecutive months and was thereby eliminated by Baltimore City Code, Article 30, § 8.0–4 c. The Board also denied the application for the additional reason that the continuation of the use of the building as a tavern "would adversely affect the community."

Aggrieved by that decision, Marc appealed to the Circuit Court for Baltimore City. That tribunal decided that Marc never intended to abandon the non-conforming use, and it "reversed and remanded" the matter to the Board "for further consideration."

We were told on oral argument that the wording of the circuit court's order led to a certain amount of confusion. We were further informed that an assistant city solicitor, counsel for the Board, met with the judge and requested clarification since the Board did not know what it was to do with the case on remand. The circuit court then changed the order from "reversed and remanded" to "reversed." Unfortunately, that act, which occurred on Saturday, November 24, 1984, was not made known to counsel for the protestants. He remained oblivious to it until July 1985. At that time the protestants, Union Square Associates, Inc. and others, moved the circuit court to set aside the hearing judge's directive of November 24, 1984. When that motion failed, Union Square journeyed to this Court where, we, in an unreported per curiam opinion, *Union Square Association, Inc., et al. v. Marc Lounge, Inc.*, No. 1496, September Term, 1985, filed April 9, 1986, vacated the circuit court's

judgment on the motion and remanded the case for a hearing. The instant appeal is a result of that hearing.

When the case was reheard, the original hearing judge remained steadfast in his decision that the Board's denial of the use should be reversed. The judge opined:

"To change that at this time, in my opinion, would be unfair to the owners of the bar. They have been there since 1984, a period of three years. If there had been anything to justify reversing my decision, it would be that there had been complaints against the bar. There's nothing here to indicate that anything of that nature has occurred. I see no reason why I should change my feeling at this time."

Fate again played a prominent role in the unusual happenings in this case. The court clerk, instead of entering on the docket that the Order of the Board of Appeals had been reversed, noted that the "Decision of the board ... is affirmed." That erroneous entry was, on motion of Union Square, corrected by "whiting out" the word "affirmed" and substituting the word "reversed." An appeal was timely noted to this Court.

## The Issues

Union Square asserts that the circuit court lacked the authority to resurrect the terminated non-conforming use. Furthermore, Union Square avers that, even if the court had the power to breathe new life into a dead use, its action was still wrong. It was wrong, appellant argues, because of the Board's denial of the continuance of the non-conforming use on the basis of its finding that the use adversely affected the neighborhood, which finding was supported by substantial evidence. Therefore, Union Square says, the circuit court should not have substituted its judgment for that of the Board.

## The Law

The Baltimore City Zoning Ordinance, codified as Article 30 of the Baltimore City Code, was signed into law by then Mayor Thomas J. D'Alesandro III on April 20, 1971. That

ordinance, with amendments, continues to regulate zoning in Baltimore City. We are here concerned with Chapter 8, entitled "Non–Conformance."

The legislative purpose of non-conformance in Baltimore City was expressed by the Mayor and City Council in a preamble to Chapter 8. There, it is said, in pertinent part:

"This zoning ordinance establishes separate districts, each of which is an appropriate area for the location of the uses and structures which are permitted in that district. *It is necessary and consistent with the establishment of those districts that all uses and structures incompatible with permitted uses and structures be strictly regulated and properly controlled.* It is the purpose of this chapter to provide for the regulation of non-conforming uses and non-complying structures existing in the various districts.

Since non-conforming uses and non-complying structures substantially and adversely affect the maintenance, development, use, and taxable value of other property in the district, *a time limit, or tolerance period, has been placed upon the continuance of certain such uses* having serious blighting effects on adjacent uses. In such cases, the adoption of a reasonable amortization program permits the owner to gradually make plans during a period when he is allowed to continue the use of the property, while at the same time assuring the public that the district in which the non-conforming use exists will eventually benefit from a substantial uniformity of uses within such district." (Emphasis supplied.)

The record in the case *sub judice* indicates that the Marc Lounge has operated as a Class III non-conforming use in a residential zone. That use is controlled by the provisions of § 8.0–4, Chapter 8, Article 30, Baltimore City Code. The applicable subsection provides:

"c. *Restoration. Where a structure, or portion thereof, devoted to a Class III non-conforming use is destroyed or damaged by fire,* or other casualty, or act of God, *no repairs or reconstruction,* except to make the

structure and use conform to the regulations of the district in which the structure is located, *shall be made unless a building permit is obtained and restoration is started within one year from the date of the destruction or damage* and such restoration is diligently pursued to completion."

The Board, in its holding, referred to Baltimore City Code, Article 30, § 8.0–4 c and § 8.0–4 f. The latter provides for termination of a non-conforming use when it has been discontinued for twelve consecutive months.[1] Although the Board alluded to § 8.0–4 f, it need not have done so because, as we shall explain, § 8.0–4 c is dispositive of the matter.

The circuit court appears to have ignored § 8.0–4 c and turned its holding on the extension provisions provided in the last quoted paragraph of § 8.0–4 f in n. 1. That paragraph permits the Board "to extend the time limit for discontinuance for an additional period or periods" if the extension is in accordance with § 8.0–7. The court further

---

1. Baltimore City Code, Art. 30, § 8.0–4 f provides:

   *"Discontinuance and Abandonment. Whenever any Class III non-conforming use, or any part thereof, has been discontinued for a period of 12 consecutive months, such discontinued non-conforming use, or part thereof, shall not thereafter be re-established,* and any subsequent use of that land, structure, or part thereof, shall conform to the regulations of the district in which the land or structure is located. Such discontinuance of the active and continuous operation of such non-conforming use, or any part thereof, for such period of 12 months shall constitute an abandonment of such non-conforming use, or part thereof, respectively, regardless of any reservation of an intent not to abandon same or of an intent to resume active operations. If, within a period of less than 12 months, actual abandonment in fact is evidenced by removal of structures, machinery, or equipment, or by alterations indicating a change in the use of the land, structure, or part thereof, the abandonment shall be completed at the time of such event and all rights to re-establish or continue such non-conforming use, or part thereof, shall terminate as of that time.

   Notwithstanding this provision, however, the Board is hereby authorized to extend the time limit for discontinuance for an additional period or periods in accordance with the authority and procedures established in Section 8.0–7 of this chapter." (Emphasis supplied.)

held that Marc Lounge never intended to abandon the non-conforming use.

■ The ruling of the circuit court was erroneous for two reasons: First, § 8.0–7 has no application to § 8.0–4 c. As we read § 8.04 c, if a fire or other casualty has destroyed or damaged a structure housing a non-conforming use and repairs or reconstruction had not been commenced, under the authority of a valid building permit, within one year of the destruction or damage, the non-conforming use terminates, and neither the Board nor the court may breathe new life into a dead use.

■ Second, the hearing court's determination that Marc Lounge did not intend to abandon matters not one whit. Section 8.0–4 c is clear and unambiguous. The non-conforming use terminates if repair or reconstruction is not started within one year from the date of the damage to the use. There is no provision in the section that permits extension based upon the use owner's intent. Intent to abandon is totally irrelevant. *See C.F. Lytle Co. v. Clark,* 491 F.2d 834 (10th Cir.1974); *Prudco Realty Corp. v. Palermo,* 60 N.Y.2d 656, 455 N.E.2d 483, 467 N.Y.S.2d 830 (1983); *Two Wheel Corp. v. Fagiola,* 96 A.D.2d 1098, 467 N.Y.S.2d 66 (1983); *Chicago v. Cohen,* 49 Ill.App.3d 342, 7 Ill.Dec. 174, 364 N.E.2d 335 (1st Cir., 1977); *Anderson v. City of Paragould,* 16 Ark.App. 10, 695 S.W.2d 851 (1985). *See also* Anderson, *American Law of Zoning 3d* (1986), § 6.68. To reach the result achieved by the hearing court would require us to ignore the clarion call of the ordinance, rewrite it, or declare that the Mayor and City Council of Baltimore did not mean what they so clearly said. *Canada's Tavern, Inc. v. Town of Glen Echo,* 260 Md. 206, 271 A.2d 664 (1970); *Harford County v. McDonough,* 74 Md. App. 119, 536 A.2d 724 (1988).

## Conclusion

■ As we have seen, the structure in the instant case was "damaged by fire" in April 1981. Marc Lounge's

application for a permit to undertake reconstruction or repair was not obtained until September 1982. That is a period of time well in excess of the one year limit mandated by § 8.0–4 c. After the expiration of the one year limitation imposed by the ordinance, the permit could be issued only to allow compliance with the use requirements of the district where the structure is located. That means that the only permit that may be issued is to authorize conversion of the tavern to a dwelling house.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO AFFIRM THE HOLDING OF THE BOARD OF MUNICIPAL AND ZONING APPEALS.

COSTS TO BE PAID BY APPELLEE.