## S90A0973. THE ANSLEY HOUSE, INC. v. CITY OF ATLANTA et al.
### (397 SE2d 419)

FLETCHER, Justice.

We granted the property owner's discretionary application in order to determine whether the discontinuation of a permissible nonconforming use as a result of the revocation of a business license results in the destruction of that nonconforming use as a matter of law. We find that it does not and reverse the judgment of the trial court.

The subject property has been continuously operated and maintained as a rooming house since the 1920's. It is currently zoned R-4 (single-family residential) under the City of Atlanta Zoning Ordinance. A rooming house is not permitted in that zoning classification; however, because the use of the property as a rooming house predated the adoption of the city's zoning ordinance, the use as a rooming house has been permitted as a legal, nonconforming use.

Prior to appellant's purchase of the property, the mayor revoked the former owner's business license, effective June 19, 1987, due to housing, building, and electrical code violations. In May of 1987, however, appellant met with the city officials in charge of zoning and buildings to determine what steps, if any, could be taken to continue to operate the property as a rooming house. A zoning review officer of the city's Bureau of Buildings, Zoning Enforcement Division, by letter to appellant dated May 8, 1987, verified that the use of the property as a 45-unit rooming house was a legal, nonconforming use. Appellant also contends that its officers were assured orally by city zoning officials that by obtaining a building permit for the renovation of the property and beginning renovations within a year of the date upon which the property ceased to operate as a rooming house, the property would retain its status as a legal, nonconforming use because the

running of the one-year forfeiture period provided for in the zoning ordinance would be tolled. Such ordinance provides as follows:

> When a nonconforming use of a major structure or a major structure and premises in combination is discontinued for a continuous period of one (1) year, the structure and premises in combination, shall not thereafter be used except in conformity with the regulations of the district in which it is located. Such restriction shall not apply if such cessation is as a direct result of governmental action impeding access to the premises.

Atlanta Zoning Ordinance § 16-24.005 (5).

In reliance upon these assurances, appellant purchased the property on September 30, 1987, and was issued a building permit on February 9, 1988 which allowed appellant to begin a major renovation of the property. Appellant has expended in excess of 1.6 million dollars to purchase, renovate, and bring the property back up to the city's building code requirements. On May 17, 1988, appellant filed an application for a business license to operate the property as a rooming house. On June 22, 1988, the director of the city's Bureau of Buildings affirmed that the property constituted a legal, nonconforming rooming house use, and, subject to completion of the work, the building was approved for use as a rooming house. The Ansley Park Civic Association filed an appeal of such ruling on July 12, 1988.

By letter dated July 22, 1988, the chief building inspector of the Bureau of Buildings, Building Inspection Division, informed the license review board that:

> It was and is the decision of this office that obtaining the Building Permit and beginning the work eight months after the revocation [of the license to operate a rooming house at the location in question] allows the use of the building to continue as a non-conforming rooming house.

On July 22, 1988, the license review board recommended that appellant's business license application be approved, and on August 1, 1988, the mayor approved the application to permit the operation of a rooming house on the property. Appellant received a temporary certificate of occupancy from the city on August 19, 1988, the same day that the Board of Zoning Adjustment held a public hearing on the appeal of the civic association and voted to revoke the legal, nonconforming use status of the property for use as a rooming house.

The property owner appealed the decision of the administrative board to the Superior Court of Fulton County. That court upheld the board's decision, concluding that the nonconforming use terminated

because the property owner was prohibited as a matter of law from utilizing the property as a boarding house for a period of one year.

The primary treatise on zoning law, Rathkopf's The Law of Zoning and Planning, recognizes that:

> [t]he most common ground upon which the loss of the right to use property in nonconformity was based in the early cases was that the right had been "abandoned." In these cases, the term "abandonment" was construed to mean the intentional relinquishment of a known right to devote the property to a permitted nonconforming use, evidenced by an overt act or failure to act, sufficient to support the implication of such an intent.

A. Rathkopf and D. Rathkopf, Rathkopf's The Law of Zoning and Planning, Vol. 4, § 51.08 at 130 (1990).

Because of the difficulties of proof inherent in establishing the existence or non-existence of "intent to abandon," an objective standard as to when a property owner's subjective state of mind evidenced an intent to abandon was often incorporated into the zoning ordinances themselves by way of discontinuance provisions which set forth a specific time period.

> A discontinuance provision which specifically states that it operates to prevent and prohibit resumption of a nonconforming use after a specified period of time has elapsed, regardless of any reservation of an intent not to abandon. . ., removes the factor of intent to abandon; it operates even where there was no intent to abandon or even where there was an intent *not* to abandon.

(Emphasis in original.) Rathkopf, supra at 134.

Where an ordinance sets forth a specific time period but contains nothing that negates the factor of intent to abandon, the expiration of the time period set forth in the ordinance has been construed by a majority of courts to merely raise a rebuttable presumption that there has been an intent to abandon the nonconforming use. Some proof of an overt act or failure to act is still required before there will be a finding of an intent to abandon the nonconforming use. Rathkopf, supra at 134-135; R. Anderson, American Law of Zoning 3d, Vol. 1, § 6.65 at 635-639. See also Rathkopf, supra at 139-143.

In *Paer v. Guhl*, 236 Ga. 768 (225 SE2d 261) (1976), this court recognized that the great majority of states in this country, Georgia included, equate non-use with abandonment and provide that abandonment is a question of intent. The ordinance involved here does not contain anything that negates the factor of intent and thus the

time period set forth merely raises a rebuttable presumption. Appellant has presented ample evidence of a series of closely connected overt acts, occurring months prior to the expiration of the period specified in the ordinance, which rebut that presumption.

Appellant's acts of obtaining the building permit, beginning renovations to satisfy building code requirements, applying for a business license, and obtaining a temporary certificate of occupancy, provide clear and convincing evidence of an intent not to abandon the nonconforming use. Such intent tolled the running of the forfeiture period. It might take appellant six months, 12 months or even longer to complete the renovations and to be in a position to reapply for a business license. The fact that appellant has no business license to operate the property as a rooming house, and could not apply for such license until one year after the date of the previous license's revocation, is irrelevant so long as there is, as here, ample evidence of the owner's intent not to abandon the nonconforming use prior to the expiration of the specified period. We hold that appellant continues to be entitled to the benefit of the nonconforming use of the property as a rooming house.

*Judgment reversed. All the Justices concur, except Weltner, Hunt and Benham, JJ., who dissent.*

WELTNER, Justice, dissenting.

1. Because the developers in this case were able to spend one million seven hundred thousand dollars to renovate a dwelling house that was zoned for single family residential use, this court has found an "intent" not to "abandon" a "use."[1] (Opinion, p. 543.) That amounts to the sanction by the court of the operation, in the midst of a residential area, of what is little different from a commercial hotel.[2]

---

[1] That "use" is one that the developers never had, as shown below. See *Corey Outdoor Advertising v. Bd. of Zoning Adjustment of the City of Atlanta*, 254 Ga. 221 (327 SE2d 178) (1985) (permit for illegal use is void and vests no property rights).

[2] The judgment in this case will restore the prior nonconforming use of a "rooming house." That, in itself, raises a host of additional questions, which will have to be addressed in later litigation, e.g., whether a "bed and breakfast" establishment, as the current Ansley Inn is known, can qualify as a "rooming house" under the Code of the City of Atlanta. Can commercial activities, such as receptions, exhibitions, etc., lawfully be conducted in a "rooming house?" See id. § 16-29.001 (12) (b) 6:

> Rooming house: A building or group of attached buildings containing in combination 5 to 20 lodging units housing no more than 20 persons for occupancy for *weekly or longer periods*, with or without board, as distinguished from hotels and tourist homes in which rentals are generally for daily or weekly periods and occupancy is by transients. [Emphasis supplied.]

See also § 16-24.005 (1):

> No existing structure devoted to a use not permitted by this chapter in the district in which it is located shall be enlarged, extended, or moved, except in changing the use of a structure to a use permitted in the district in which it is located.

2. There are other flaws in the majority opinion.

(a) The majority has substituted the views of two legal commentators for the holdings of the Supreme Court of Georgia.[3] The heart of the majority opinion is that only "intent" can effect an abandonment; and that "intent" must be discerned from the circumstances. To read into the plain meaning of the city ordinances such a subjective "rule" is directly contrary to our case of *Clark v. International Horizons*, 243 Ga. 63 (252 SE2d 488) (1979), as follows:

> [Nonconforming] uses are not favored in the law because they detract from the effectiveness of the comprehensive zoning plan. See: Anno. 56 ALR3d 14, 48-50, § 7; 56 ALR3d 138, 166, § 7; 57 ALR3d 279, 317-319, § 7. [Id. at 66.]

(b) Even assuming such a "rule" of "intent," the majority has applied it to the wrong party. As noted at p. 540 of the opinion, the nonconforming use in question was enjoyed by a *former* owner of the residence. The use was discontinued when the mayor of the city revoked the business license to operate a rooming house "due to housing, building, and electrical code violations." Id. Both the use and the termination of that use occurred during the prior ownership of the dwelling house. Given the majority's "rule," what is the possible materiality of any "intent" to abandon on the part of anyone other than the person who *discontinued* the prior use? The majority holds, by necessity, that an "intent" not to abandon is a muniment of title — an incorporeal hereditament — running with the land, and transferable as an element of title. Otherwise, where did the developers acquire the "right" to formulate the "intent" *not* to abandon the rooming house use? There can be but one source, of course, and that is the prior owner.[4]

(c) Even assuming the majority's "rule," the holding is directly contrary to the factual recitations of the opinion. The nonconforming use of the premises was, as a matter of law, abandoned by the prior owner by virtue of the continuous code violations. See, e.g., *Jackson v. State*, 204 Ga. 47, 48 (48 SE2d 864) (1948):

> [E]very person is presumed to intend the natural and proba-

---

[3] Opinion, p. 542, citing A. and D. Rathkopf. If we are to yield our case authority to commentary, we more profitably should rely upon consistent commentary. See, e.g., McQuillin, Municipal Corporations, § 25.182 (3d ed.), "Existing and lawful nonconforming uses are contrary to public policy, and they are protected only to avoid injustice and that is the limit of their protection against conformity."

[4] *That* owner's right of use was forfeited by a series of code violations. Can it be that this "right" to formulate an "intent not to abandon" carries with it something of the nature of negotiability, where a supposed holder in due course can acquire a right greater than that held by its transferor?

ble consequences of his conduct, particularly if that conduct be unlawful and dangerous to the safety or lives of others.

3. The correct end of this case is to affirm the trial court.

(a) The following authorities govern permissible nonconforming uses:

(i) When a nonconforming use of a major structure or major structure and premises in combination is discontinued for a continuous period of one (1) year, the structure, or structure and premises in combination, shall not thereafter be used except in conformity with the regulations of the district in which it is located. Such restriction shall not apply if such cessation is as a direct result of governmental action impeding access to the premises. [City of Atlanta Code § 16-24.005 (5).]

(ii) (2) Nonconforming uses are declared by this chapter to be incompatible with permitted uses in the district involved . . . . [City of Atlanta Code § 16-24.001.]

(iii) [Nonconforming] uses are not favored in the law because they detract from the effectiveness of the comprehensive zoning plan. [Cits.] [*Clark v. International Horizons*, supra.]

(b) The following authority pertains to the revocation of a business license:

(i) *New applications not to be accepted for 12 months.* When any application for a permit to transact any business within the control of the police powers is denied for cause or revoked for cause by the mayor it shall be unlawful for the bureau of police services to accept or consider any application for license to operate at that location the same type of business within 12 months from the time of the rejection by the mayor.

(ii) *Restriction upon license review board.* It shall be unlawful for the license review board to consider any application mentioned in subsection (a) or motion for rehearing of that application within 12 months without specific authority from the mayor. [City of Atlanta Code § 14-6001.]

(c) In this case, the discontinuation of the nonconforming use was the result of the loss by the prior owner of his business license because of numerous code violations. The authorities we have cited

546

make it clear that, given the nature of permissible nonconforming use status, the discontinuation of that use for 12 months effected its loss by operation of law.[5]

I am authorized to state that Justice Hunt and Justice Benham join in this dissent.

HUNT, Justice, dissenting.

I agree entirely with Justice Weltner's dissent. I write separately only to add that in my view the intent to eventually continue the nonconforming use, whether of the previous owner whose license was revoked or of his successor in title, is irrelevant in this case.

This case does not involve the voluntary suspension of a nonconforming use by its owner. Here the nonconforming use was *involuntarily* terminated by the City of Atlanta's revocation of the former owner's business license. It was revoked because of his wilful violations of the license ordinance. Holding a valid license was *essential* to the existence of the nonconforming use. The revocation followed an adjudicatory proceeding under the Atlanta ordinance. Neither that ordinance nor the order of termination has been challenged or appealed. It must follow then, by the clear language of the Atlanta ordinances relating both to license revocation and nonconforming uses, that the non-conforming use in this case has been extinguished and cannot be revived.

I am authorized to state that Justice Weltner and Justice Benham join in this dissent.

DECIDED OCTOBER 18, 1990 —
RECONSIDERATION DENIED NOVEMBER 16, 1990.

*Peterson, Dillard, Young, Self & Asselin, Dick Wilson, Jr.,* for appellant.
*Rogers & Hardin, Richard H. Sinkfield, Terry L. Houser, David D. Blum,* for appellees.

[5] The developers insist that they had accomplished a "use" of the facilities within the 12-month suspension period by performing extensive renovations. But "use," in the sense of the governing ordinances, must be equated to the prior nonconforming use — in this case, as a rooming house. See Atlanta City Code § 16-29.001 (1): "The words *used* or *occupied* include the words *intended, designed,* or *arranged to be used or occupied.*" (Emphasis in original.)