VILLAGE OF MENOMONEE FALLS, Plaintiff-Respondent,

v.

Donald VEIERSTAHLER, Defendant-Appellant.†

Court of Appeals

*No. 93–2005. Submitted on briefs February 2, 1994.—Decided
March 9, 1994.*

(Also reported in — N.W.2d —.)

†Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Michael J. Steinle*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael J. Morse*, of *von Briesen & Purtell, S.C.*, of Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. This is a zoning dispute between the landowner, Donald Veierstahler, and the zoning authority, the Village of Menomonee Falls. We uphold the circuit court's ruling that the operation of a nonalcoholic social club following the discontinuance of Veierstahler's legal nonconforming tavern business constituted a violation of the zoning ordinance. Therefore, we affirm the circuit court's order imposing a

forfeiture penalty against Veierstahler for violating the zoning ordinance.[1]

## FACTS

The parties stipulated to the facts in the circuit court. This stipulation included both disputed and undisputed facts. We conclude that the undisputed facts control this case. Therefore, with one exception, we limit our historical recital to such facts.

In 1982, Veierstahler purchased the subject real estate with its two attendant structures.[2] The prior owner operated a motor vehicle repair service out of one of the structures. Following the purchase, Veierstahler leased this structure to a third party who continued the auto repair business. The other structure consisted of residential apartment units on the upper level and a tavern facility on the lower level. Following the purchase, Veierstahler rented the apartment units and conducted a tavern business from the lower level.[3]

Subsequent to Veierstahler's purchase, the Village enacted the current zoning ordinance which included Veierstahler's property in a RM-2, Multi-Family Residential zoning district. The only permitted business

---

[1] The Village commenced this action in the municipal court which ruled in Veierstahler's favor. The Village appealed to the circuit court and requested a trial de novo. *See* § 800.14(4), STATS.

[2] The stipulation does not expressly say that Veierstahler purchased the property in 1982. Rather, the stipulation says that Veierstahler has owned the property for approximately eleven years. Since the stipulation was filed in March 1993, we conclude that Veierstahler purchased the property in 1982.

[3] It is not clear from the parties' stipulation and briefs whether these activities were also conducted by the prior owner.

uses in this district are professional home offices. Since the residential use on the upper level and the tavern use on the lower level preceded the enactment of the current zoning, the Village concedes that these activities constituted legal nonconforming uses.[4]

In June 1989, the Village refused to renew Veierstahler's liquor licenses to sell fermented malt and alcoholic beverages.[5] These licenses expired no later than July 1, 1989. The Village did not issue any subsequent liquor licenses for the premises to Veierstahler. In December 1989, the Village denied a liquor license application for the premises submitted by a third party.

Following revocation of the liquor licenses, Veierstahler continued to conduct certain limited activities out of the tavern premises. These included the serving of lunches two days a week, the occasional cashing of checks for former patrons of the tavern, and the occasional selling of cigarettes or soda. The Village disputes that certain of these activities occurred, but it does acknowledge that it issued licenses to permit such activities.

In December 1990, Veierstahler rented the lower level to a third party who then operated a nonalcoholic social club from this location. Based on this new activity, the Village's zoning administrator issued a citation to Veierstahler alleging that the social club activity

---

[4] We are uncertain from the parties' stipulation and briefs whether the Village also considers the auto repair business as a legal nonconforming use. Regardless, the Village does not challenge this use and opines in its brief that it might constitute a valid conditional use under the current zoning.

[5] The validity of the Village's action in revoking these licenses is not before us.

was not a permitted use under the section of the zoning ordinance governing residential districts.[6]

In the circuit court, Veierstahler defended on the grounds that his cessation of the tavern business did not constitute an abandonment or discontinuance of the legal nonconforming use conducted on the property. He offered two theories in support. First, he argued that the various nonconforming activities conducted on the property should not be separately analyzed, but rather should be viewed in toto. Thus, Veierstahler reasoned that, despite his cessation of the tavern activity, he nonetheless continued using the property in a legal nonconforming commercial manner based upon the auto repair and the apartment rental activities. Second, Veierstahler contended that his continuation of the incidental activities related to the tavern business after the revocation of his liquor licenses and before the start up of the club served to perpetuate the legal nonconforming use.

The circuit court rejected Veierstahler's arguments and imposed a forfeiture penalty. Veierstahler appeals.

## STANDARD OF REVIEW

As our decision will reveal, we decide this case based upon the undisputed facts portion of the parties' stipulation. When the controlling facts are undisputed, the question presented is one of law which we decide without giving special deference to the determinations of the trial court. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253

---

[6] The social club ceased operations in January 1991.

(1977).[7] Despite our de novo standard of review, we value a trial court's decision on a question of law. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993). Here, the trial court has provided us with a thorough and well-reasoned decision which we have found helpful and informative on the appellate issues.

## DISCUSSION

We begin by observing that Veierstahler does not argue that a nonalcoholic social club is a permitted use under the present zoning. Rather, Veierstahler argues that he need not comply with the present zoning because he has not discontinued or terminated the prior legal nonconforming uses. Thus, the issue in this case focuses on the effect of the cessation of the legal nonconforming tavern activity, not whether the social club activity complies with the present zoning.

---

[7] Since the record in this case consists only of the parties' stipulation and other nontestimonial material, the evidentiary record is purely documentary. The law is in conflict as to our standard of review of factual determinations or inferences made by a trial court based upon a documentary record. *Pfeifer v. World Service Life Insurance Co.*, 121 Wis. 2d 567, 360 N.W.2d 65 (Ct. App. 1984), holds that we apply a reasonableness standard to such determinations. *Id.* at 570, 360 N.W.2d at 67. *State ex rel. Sieloff v. Golz*, 80 Wis. 2d 225, 258 N.W.2d 700 (1977), however, holds that a reviewing court is not bound by any inferences drawn by a factfinder from a documentary record and need not accord deference to such a finding. *Id.* at 241, 258 N.W.2d at 705. We need not resolve this conflict here since we decide this case on the *undisputed* portion of the stipulated facts, not on the disputed portion. Nor do we decide this case based on any factual determinations or inferences which the trial court may have made or drawn from such stipulated facts.

We first address Veierstahler's argument that the trial court improperly focused only on the tavern operation. Veierstahler contends that the court should have examined the entire range of activities conducted on the property, not just an activity conducted on a portion of the property. Thus, Veierstahler reasons that "[a]s used, [Veierstahler's] land taken as a whole qualifies as a present legal nonconforming use."

We disagree with Veierstahler's argument for two reasons. First, the law seeks to restrict rather than increase nonconforming uses and to eliminate such uses as speedily as possible. *City of Lake Geneva v. Smuda*, 75 Wis. 2d 532, 538, 249 N.W.2d 783, 787 (1977). Under Veierstahler's approach, a lapsed nonconforming use could be revived or a different nonconforming use commenced simply because another legal nonconforming use continues in effect. Second, zoning ordinances regulate *specific* uses. *See Town of Hobart v. Collier*, 3 Wis. 2d 182, 189, 87 N.W.2d 868, 872 (1958). The rule should be no different as to nonconforming uses.

Thus, we agree with the Village's argument that Veierstahler's other uses of the property have no bearing on the particular use at issue in this case.[8]

Next we turn to Veierstahler's claim that his continuation of activities incidental to the tavern operation after the revocation of the liquor licenses

---

[8] We also reject Veierstahler's argument that this case is governed by *Waukesha County v. Seitz,* 140 Wis. 2d 111, 409 N.W.2d 403 (Ct. App. 1987). The issue in *Seitz* was the effect of the landowner's *expansion* of a legal nonconforming use. *Id.* at 113, 409 N.W.2d at 404-05. The issue here is the effect of Veierstahler's *termination* of the legal nonconforming use.

served to continue the nonconforming use.[9] We disagree.

The Village acknowledges that an individual who is entitled to a nonconforming use has the right to engage in uses normally incidental and auxiliary to the primary nonconforming use. *See* 8A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 25.200, at 84-85 (3d ed. rev. vol. 1986). Veierstahler argues that his continuation of such incidental activities perpetuates the primary nonconforming use. However, Veierstahler cites to us no authority for this proposition and we have found none.[10] Here again, Veierstahler's argument would frustrate the policy of the law to restrict and ultimately eliminate nonconforming uses. *Smuda*, 75 Wis. 2d at 538, 249 N.W.2d at 787.

In addition, the law holds that a casual, occasional, accessory or incidental use *prior* to the enactment of a zoning ordinance does not serve to create a vested nonconforming use interest. *See id.* From this we think it follows that such ancillary activity conducted *after* the

---

[9] We appreciate that the Village disputes these events. However, we take them as a given since we conclude that they did not serve to perpetuate the legal nonconforming tavern use.

[10] The Village also argues that the "termination of the primary legal, nonconforming use of the lower level of the primary structure as a tavern would terminate any other non-residential incidental use of that structure." The Village may be correct. But we are not required to go that far in this case because the Village has not challenged Veierstahler's continued incidental uses on the tavern site. Instead, the issue is simply whether these continued ancillary operations served to perpetuate the legal nonconforming use.

primary nonconforming use is terminated cannot serve to perpetuate the abandoned nonconforming use.

Veierstahler also argues that he did not voluntarily or intentionally abandon his tavern operation and that his conduct following the revocation of the liquor licenses reveals good faith efforts by him to maintain the business activity. He also argues that the Village's revocation of his licenses and subsequent denial of the third party's license application frustrated his goal to continue the tavern operation. Thus, Veierstahler reasons that the Village, not he, caused the nonconforming use to cease.

We have two responses. First, the Village's revocation of Veierstahler's liquor licenses and its later denial of the third party's application were never challenged when those actions were taken. Nor were the validity of those actions litigated in this action. Second, although we accept Veierstahler's representations of good faith, these do not assist Veierstahler's legal position in this case. The question of voluntary intent is irrelevant where the cessation of the nonconforming use has endured for the requisite time under the ordinance. *See State ex rel. Peterson v. Burt*, 42 Wis. 2d 284, 288-90, 166 N.W.2d 207, 209-10 (1969). Here, the evidence shows that the tavern operation has been discontinued for the requisite time under the ordinance.[11]

---

[11] The Village explains how the six-month duration of Veierstahler's cessation of the legal nonconforming use is satisfied whether the time limit ran from the date of the expiration of Veierstahler's liquor licenses or from the date of the Village's later denial of a license to the third party. We do not read Veierstahler's brief to raise this particular issue. Regardless, we agree with the Village's argument and analysis.

## CONCLUSION

The circuit court correctly determined that Veierstahler had discontinued or terminated the legal nonconforming tavern use for the requisite period under the zoning ordinance. Thus, the court correctly concluded that the operation of the social club on the premises constituted a violation of the current zoning ordinance. We affirm the resulting order imposing a forfeiture against Veierstahler.

*By the Court.*—Order affirmed.