928 P.2d 659

**CITY OF GLENDALE, a municipal corporation of the State of Arizona, Plaintiff Counterdefendant, Appellant,**

v.

**Amer "Omar" ALDABBAGH dba Foxy's Show Club; Amer "Omar" Aldabbagh and Jane Doe Aldabbagh, husband and wife; David B. Benz and Jane Doe Benz, husband and wife, Defendants Counterclaimants, Appellees.**

No. 1 CA–CV 95–0401.

Court of Appeals of Arizona, Division 1, Department E.

May 7, 1996.

Review Granted Dec. 17, 1996.

---

**7.** A.R.S. section 36–2915(I) and (J) state:

Glendale City Attorney by David A. Pennartz, Deputy City Attorney, Glendale, for Plaintiff–Counterdefendant–Appellant.

David K. Jones, Phoenix, for Defendants–Counterclaimants–Appellees.

## OPINION

VOSS, Judge.

The sole issue on appeal is whether Glendale Zoning Ordinance section 7(d) (1971) (section 7(d)) allows the City of Glendale (Glendale) to terminate a nonconforming use based merely upon a period of nonuse without a showing of the owner's intent to abandon the use. We hold section 7(d) creates a rebuttable presumption of abandonment.

In 1978, Glendale amended its zoning ordinance. One affected use was Foxy's Show Club (the club) operated by Amer Aldabbagh. Although the club was in violation of the amended zoning ordinance, it was allowed to continue its operation as a legal, nonconforming use. The club operated under this status until May 1992. In May 1992, the County Attorney brought a civil nuisance action against Aldabbagh and the club. As part of the nuisance action, law enforcement officials seized the club. Law enforcement officials maintained continuous possession of the club from June 1992 until January 1994. During the period the club was in the possession of county agents, Aldabbagh sent notice to Glendale of his intent to continue operating the club as a legal, nonconforming use.

Following resolution of the nuisance action, possession of the club was returned to Aldabbagh. Aldabbagh then leased the club to David Benz. Benz attempted to obtain a Glendale business license to reopen the business but was denied the license pending zoning clearance. Glendale refused to provide the zoning clearance, claiming the club had lost its legal, nonconforming use status by "ceas[ing] to be carried on for a period exceeding one year." Glendale then initiated a declaratory judgment action against Aldabbagh and Benz (appellees). The parties stipulated that Aldabbagh did not intend to abandon the legal, nonconforming use of the club. The trial court ruled intent to abandon is necessary for appellees to lose the status of legal, nonconforming use and ordered Glendale to issue the requested zoning clearance to appellees.

Appellant filed a timely notice of appeal.

## DISCUSSION

The sole issue on appeal is whether, under section 7(d), a nonconforming use may be lost without a showing that the owner intended to abandon the use. We interpret municipal ordinances in the same manner as state statutes. *Abbott v. City of Tempe*, 129 Ariz. 273, 275, 630 P.2d 569, 571 (App.1981). Interpretation of statutes is a question of law which this court reviews *de novo*. *Resolution Trust Corp. v. Western Technologies, Inc.*, 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994).

Local governments' authority to enact zoning ordinances is derived from the state and must comply with the state's enabling statutes. *Levitz v. State*, 126 Ariz. 203, 205, 613 P.2d 1259, 1261 (1980). Arizona's enabling statute specifically protects nonconforming uses by stating:

> Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

Ariz.Rev.Stat.Ann. § 9–462.02(A).

Although the state statutory scheme specifically protects existing, nonconforming uses, the state's public policy calls for the eventual "elimination of such nonconforming uses." Ariz.Rev.Stat.Ann. § 9–462.02(A); *see also Gannett Outdoor Co. v. City of Mesa*, 159 Ariz. 459, 461, 768 P.2d 191, 193 (App.1989). However, the policy of eliminating nonconforming uses may only be accomplished within the statutory scheme, *Gannett Outdoor Co.*, 159 Ariz. at 461, 768 P.2d at 193, and "within the limits of fairness and justice." *Rotter v. Coconino County*, 169 Ariz. 269, 272, 818 P.2d 704, 707 (1991). Zoning statutes and ordinances regulating nonconforming uses are construed to further the state's policy of eliminating nonconforming uses and should be construed against the nonconforming use. *Rotter*, 169 Ariz. at 276–77, 818 P.2d at 711–12.

The inability to eliminate nonconforming uses has been cited as the fundamental prob-

lem facing modern zoning. *Hartley v. City of Colorado Springs,* 764 P.2d 1216, 1223–24 (Colo.1988); *City of Los Angeles v. Gage,* 127 Cal.App.2d 442, 274 P.2d 34, 40 (App.1954). The traditional method of terminating nonconforming uses was through abandonment. However, the difficulty of establishing subjective intent to abandon led many municipalities to implement provisions calling for termination of a nonconforming use after a specified period of nonuse. *The Ansley House, Inc. v. City of Atlanta,* 260 Ga. 540, 397 S.E.2d 419, 420 (1990); *League to Save Lake Tahoe v. Crystal Enterprises,* 685 F.2d 1142, 1146 (9th Cir.1982); 4 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 51B.02[2] at 51B–9 (4th ed. 1991). Glendale's section 7(d) is one such provision. The relevant portion of section 7(d) provides:

> No building, structure or land in or on which a nonconforming use is abandoned or ceased to be carried on for a period exceeding one year or is superseded by a conforming use subsequent to the enactment of this ordinance shall again be devoted to any prohibited use....

No Arizona court has interpreted a provision similar to Glendale's or addressed the issue of whether an intent to abandon is required before a nonconforming use may be lost. Courts in other states interpreting similar zoning provisions have generally split into two different interpretations. One group of courts interprets discontinuance provisions to mean that after the passage of the statutory time period, the nonconforming use is lost regardless of the owner's intent. The other group of courts interprets the provisions to require an intent to abandon the nonconforming use. Under the latter view, statutory time provisions establish a rebuttable presumption of intent to abandon the use.

## TERMINATION REGARDLESS OF INTENT

A substantial minority of courts hold the owner's intent is not relevant to the question of discontinuance. *See, e.g., Essex Leasing, Inc. v. Zoning Bd. of Appeals,* 206 Conn. 595, 602, 539 A.2d 101, 105 (1988). These courts generally base their holdings on the difficult evidentiary burden on those attempting to prove abandonment, the goal of uniform and comprehensive zoning plans, discouraging perjury by property owners, and the desire for an efficient means to end nonconforming uses. *Hartley,* 764 P.2d at 1224; *Villari v. Zoning Bd. of Adjustment,* 277 N.J.Super. 130, 134–36, 649 A.2d 98, 100–01 (Ct.App.Div. 1994).

One group of cases cited by Glendale was decided under statutory schemes specifically negating the need to show intent. *Union Square Ass'n, Inc., v. Marc Lounge, Inc.,* 75 Md.App. 465, 470, 541 A.2d 1321, 1324 (Spec.App.1988) (discontinuance of nonconforming use for "period of 12 months shall constitute an abandonment of such nonconforming use ... regardless of any reservation of an intent not to abandon"); *see also* 4 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 51B.02[2], at 51B–9 (4th ed. 1991). Several other courts have stated the broader rule that where a discontinuance provision states a specific time period, the owner's intent is irrelevant. However, these courts were not faced with factual situations where that rule was necessary to their holding. *Villari,* 277 N.J.Super. at 136, 649 A.2d at 101 (termination of nonconforming use is "sustainable under either the traditional subjective abandonment test or the objective discontinuance test"); *Anderson v. Paragould,* 695 S.W.2d 851, 852 (Ark.App.1985) (broad language where owner sold property, moved away for two years, and then returned to retake possession of property when original sale conditions not met by buyer); *League to Save Lake Tahoe,* 685 F.2d at 1146 (broad language where owner of building under construction ceased construction for period in excess of one year). Although these courts spoke in very broad terms, they were not faced with factual scenarios like the one presently before this court where the owner's intent *not* to terminate the use was maintained clearly and consistently.

Additionally, other courts analyzing discontinuance provisions require the nonuse or discontinuance to be voluntary before the time of discontinuance will automatically terminate a nonconforming use. *Hartley,* 764 P.2d at 1223, 1225 (stating that "[a] growing

minority of states hold that voluntary nonuse of the property for the time specified in a discontinuance ordinance terminates the nonconforming use regardless of intent to abandon" and adopting the minority view); *Texas Nat'l Theatres, Inc. v. City of Albuquerque*, 97 N.M. 282, 287, 639 P.2d 569, 574 (1982) ("we recognize that mere temporary suspension of use resulting from causes beyond the owner's control does not constitute an abandonment or discontinuance within the meaning of the Code"); *Spencer v. Zoning Hearing Bd.*, 111 Pa.Cmwlth. 111, 114, 533 A.2d 497, 499 (1987) (must be shown that nonuse was not "caused by circumstances beyond the landowners' or occupiers' control"); *Ernst v. Johnson County*, 522 N.W.2d 599, 604 (Iowa 1994) (discontinuance caused by "circumstances beyond the control of a property owner will not cause the loss of a nonconforming use"). Under these cases appellees would be able to reopen the club because the evidence is uncontroverted that the club did not voluntarily cease operations.

Glendale has cited only two, and we were unable to locate any additional, cases where government intervention caused the nonconforming use to be discontinued. The present case is distinguishable from both cases. In *Village of Menomonee Falls v. Veierstahler*, 183 Wis.2d 96, 515 N.W.2d 290 (App. 1994), the village refused to renew the liquor license for a nonconforming tavern. The owner never challenged the validity of the village's successful action to terminate his liquor license. *Id.* at 104, 515 N.W.2d 293. Additionally, the court's language that no showing of intent is required to terminate a nonconforming use was gratuitous language unnecessary to the holding of the case. *Id.* Unlike *Veierstahler*, Aldabbagh vigorously defended against the nuisance action brought against him and was ultimately successful in that action.

In *Sapakoff v. Town of Hague Zoning Board of Appeals*, 211 A.D.2d 874, 621 N.Y.S.2d 215 (N.Y.App.1995), the discontinuance was, at least initially, caused by federal government's seizure of the noncon-

forming restaurant. However, the property owner stipulated to the forfeiture, vesting title in the federal government. The federal government advertised the property for sale as residentially zoned and sold the property two years later. *Id.* at 874, 621 N.Y.S.2d at 216. The subsequent buyer then attempted to use the property as a restaurant. *Id.* In *Sapakoff*, the original owner's actions are sufficient to establish the traditional standard for abandonment: intent to abandon and overt acts consistent with that intent. Further, the subsequent owner purchased property that had been vacant for approximately two years and had been advertised as residentially zoned. The subsequent owner had no property interest in the nonconforming use.

## REBUTTABLE PRESUMPTION

█ A majority of courts interpret ordinances setting forth a specific time period as creating a rebuttable presumption of intent to abandon. *See, e.g., The Ansley House, Inc.*, 260 Ga. at 543, 397 S.E.2d at 421; *Andrew v. King County*, 21 Wash.App. 566, 570–72, 586 P.2d 509, 513–14 (1978); *see also* 4 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 51B.02[2], at 51B–9 through 11 (4th ed. 1991). Under this interpretation, the owner of a use discontinued for the statutorily defined time period may rebut the presumption that the use was abandoned.

█ We agree that the continuance of nonconforming uses greatly reduces the beneficial aspects of modern, comprehensive zoning and that nonconforming uses should eventually be eliminated. However, the process of eliminating nonconforming uses must not unduly burden a property owner's right to continue an existing use.

█ Contrary to Glendale's assertion, reading section 7(d) to create a rebuttable presumption does not render the section redundant. Courts finding a rebuttable presumption have recognized that the legislative additions of discontinuance [1] provisions re-

---

**1.** We acknowledge that most courts reaching this conclusion have done so interpreting time provisions speaking in terms of "discontinuance"

rather than Glendale's language, "ceased to be carried on." However, because the terms are

flect a desire by legislators to eliminate the cities' burden of proving intent to abandon. *County of Isanti v. Peterson*, 469 N.W.2d 467, 469 (Minn.1991), *overruled on other grounds by Tyroll v. Private Label Chemicals, Inc.*, 505 N.W.2d 54 (Minn.1993). Treating the time provision as a rebuttable presumption of intent to abandon provides an additional method for the termination of nonconforming uses. The city can terminate a nonconforming use where it possesses satisfactory evidence of intent to abandon the use. However, where the city lacks significant evidence of the property owner's subjective intent, the city can make its prima facie case merely by establishing that the use has been unused for the required time. The burden then shifts to the property owner to rebut the presumption. If the owner does not come forward with evidence of intent not to abandon, the use is terminated. However, if the owner appears and establishes that the use was not abandoned the presumption is extinguished.

Interpreting section 7(d) as a rebuttable presumption is consistent with the requirement that zoning ordinances affecting nonconforming uses be strictly construed to advance the state's interest in eliminating nonconforming uses. *Rotter*, 169 Ariz. at 276–77, 818 P.2d at 711–12. The presumption eases the city's burden of proof, thereby making it easier to remove nonconforming uses and promoting the policy of achieving uniform, comprehensive zoning. Additionally, the ordinance places an extra burden upon the property owner to come forward and explain the discontinuance.

Interpreting section 7(d) as creating a rebuttable presumption of intent to abandon is the only approach which properly balances cities' legitimate interest in eliminating nonconforming uses with property owners' right to continue the lawful use of their property.

## CONSTITUTIONAL RAMIFICATIONS OF AN ABSOLUTE TIME–BAR

 Where possible, this court has a duty to interpret a statute or ordinance in a manner "which will render it constitutional."

*Arizona Downs v. Arizona Horsemen's Found.*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). Because the statutory interpretation urged by Glendale would deprive owners of nonconforming uses without due process of law, we must interpret the ordinance as creating a rebuttable presumption of intent to abandon.

 The law is well-settled that a municipality cannot enact a zoning ordinance without provisions for the continuance of preexisting, nonconforming uses. *Rotter*, 169 Ariz. at 271, 818 P.2d at 706; *Watanabe v. City of Phoenix*, 140 Ariz. 575, 577, 683 P.2d 1177, 1179 (App.1984); *City of Minot v. Fisher*, 212 N.W.2d 837, 841 (N.D.1973). A zoning ordinance which eliminates nonconforming uses merely by its enactment is unconstitutional as a taking of property without due process of law. *Rotter*, 169 Ariz. at 271, 818 P.2d at 706.

 An ordinance that terminates nonconforming uses based only upon a period of nonuse without allowing the property owner an opportunity to explain the nonuse raises similar constitutional problems. Unfortunately, the courts interpreting other discontinuance provisions have offered little guidance into the constitutionality of such provisions. The courts upholding such provisions have either completely ignored the constitutional issue or have provided only a conclusory statement of constitutionality.

We have only discovered three reported cases referring to the constitutionality of absolute time-bar provisions. In two of these cases, the court refused to rule on the validity of the provisions as applied to the particular property owners. *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 625, 572 A.2d 925, 929–30 (1990) (issue was improper for appellate review because plaintiff failed to raise the issue in trial court); *Essex Leasing, Inc.*, 539 A.2d at 105 (issue was improper for appellate review because plaintiff failed to raise the issue at trial and inadequately briefed the issue on appeal). With little analysis, the *Hinsdale* court found the provision facially constitutional as a reasonable regulation of nonconforming uses to advance a legitimate state interest. *Hinsdale*, 153 Vt. at

synonymous, our analysis is not affected by the subtle language difference.

627, 572 A.2d at 930. The Colorado Supreme Court, following a one paragraph analysis, upheld the constitutional validity of a discontinuance provision so long as the provision provides a reasonable time period for discontinuing the nonconforming use. *Hartley,* 764 P.2d at 1224. None of these cases provide a complete analysis of the constitutionality of discontinuance provisions.

▮ Under Glendale's interpretation of the zoning ordinance, a nonconforming use is lost if, for any reason, the owner discontinues the use for one year. This interpretation effectively raises a conclusive presumption of intent to abandon the nonconforming use. Statutes creating conclusive presumptions are disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments. *Vlandis v. Kline,* 412 U.S. 441, 446, 93 S.Ct. 2230, 2233, 37 L.Ed.2d 63 (1973); *Cleveland Bd. of Education v. LaFleur,* 414 U.S. 632, 644, 94 S.Ct. 791, 798, 39 L.Ed.2d 52 (1974).

▮ Conclusive presumptions are prohibited by due process when the presumption is "not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination." *Vlandis,* 412 U.S. at 452, 93 S.Ct. at 2236. The Supreme Court utilized this test in striking down two school districts' policies requiring pregnant teachers to take maternity leave four and five months before their expected delivery dates. *LaFleur,* 414 U.S. at 644, 94 S.Ct. at 798. The policies were justified to keep physically unfit teachers out of classrooms. *Id.* at 643, 94 S.Ct. at 798. The Court held the ability of a pregnant teacher to work past a particular time period was too individualized for any absolute time policy. *Id.* at 645–46, 94 S.Ct. at 798–99.

Similarly, there is an insufficient relationship between a period of nonuse and intent to abandon to support the derogation of the vested property right to continue a nonconforming use. There are countless reasons why property may go unused. Although some of these reasons are undoubtedly sufficient to justify the loss of a nonconforming use, many others are not. *See Stanley v. Illinois,* 405 U.S. 645, 654, 92 S.Ct. 1208, 1214, 31 L.Ed.2d 551 (1972).

The precise facts of this case demonstrate the arbitrary nature of the discontinuance provision. Appellees would lose a vested property right, their legal, nonconforming use, completely against their wishes and based entirely upon the actions of actors outside of their control. Appellees fought the nonuse of their property for the entire period of nonuse. Without the efforts of the government law enforcement officials, pursuing an unsuccessful claim against appellees, the nonconforming use never would have been discontinued. Glendale's interpretation would create the unacceptable result of allowing two agencies of state government to accomplish together what neither could have accomplished independently. Such a result exceeds "the limits of fairness and justice." *Rotter,* 169 Ariz. at 272, 818 P.2d at 707.

## CONCLUSION

Under the language of section 7(d), one year of nonuse creates a rebuttable presumption that the owner intends to abandon the nonconforming use. After the relevant period of nonuse of a nonconforming use is established, the owner has the opportunity to rebut the presumption of abandonment. Because the parties have stipulated appellees did not intend to abandon their nonconforming use, appellees are entitled to continue the nonconforming use.

We affirm.

THOMPSON, J., concurs.

GERBER, Presiding Judge, concurring in part and dissenting in part.

Although I concur with the majority's result, I write separately to express my concerns regarding (1) the notion that section 7(d) ought to create a rebuttable presumption of abandonment and (2) the notion that even involuntary cessation of use is effective to terminate a non-conforming use.

Proof of abandonment generates subjective statements of personal intent; such intent has no place in what should be an objective zoning determination. The property owner's intent ought to be irrelevant so long as the owner has voluntarily ceased the nonconforming use for the specified period. *County of Isanti,* 469 N.W.2d at 470; *Hartley,* 764 P.2d at 1223; *Texas Nat'l Theatres,* 639 P.2d at 574. Several courts have recognized the temptation of self-serving statements and

perjury inherent in abandonment testimony. *Villari*, 649 A.2d at 101; *Hartley*, 764 P.2d at 1223. Objective standards reduce these dangers by obviating testimony of abandonment. A zoning authority or court can well base its determination solely on a finding that the owner voluntarily ceased a nonconforming use for a statutory period, without inquiry into the owner's intent to abandon.

Secondly, the majority's result punishes owners who have involuntarily ceased their nonconforming use due to circumstances beyond their control. A property owner who involuntarily ceases his nonconforming use should not lose his nonconforming use. *County of Isanti*, 469 N.W.2d at 470; *Texas Nat'l Theatres*, 639 P.2d at 574. A government's efforts to eliminate nonconforming uses, however well-intentioned, must comport with basic concepts of fairness, *Rotter*, 169 Ariz. at 272, 818 P.2d at 707, which in my view requires voluntary cessation.

The record here does not demonstrate those principles. The City of Glendale welded and padlocked the door to Foxy's and posted a warning that entry to the premises was a potential felony. Aldabbagh can hardly be said to have ceased his nonconforming use voluntarily. I join with the majority in this result but not regarding the need for abandonment testimony.